Cushing *v.* Wyman.

THEOPHILUS CUSHING *versus* FRANCIS WYMAN, JR., ET AL.

An executory agreement with reference to the payment of a note, constitutes no bar to a suit upon the same.

A plea of accord can be sustained only by proving an accord not executory, but which ought to be and has been executed before the commencement of the action.

To enable a party to set up the defence of payment, there must be the concurring intention of the party making and the party receiving the payment. The payment must be received as well as made in satisfaction of the debt.

An agreement to transfer a note, to be credited on account of goods sold, when it should become payable according to its conditions, is neither payment or extinguishment of the note; and if at the maturity of the note there was due for the goods a sum exceeding the amount of the note, that would constitute no bar to a recovery upon the note, where, before that time it had been transferred for a full and adequate consideration, without notice.

9

Cushing *v.* Wyman.

Upon an account current, where there is no specific appropriation of payments, they must be applied to extinguish the first items of payment, although the creditor may hold security for those items, and none for the final balance of the account.

An agreement to abandon a claim without consideration shown, is a mere *nudum pactum.* Accord, without satisfaction, would be no answer ; and if a substituted agreement be shown, it must appear that its performance was accepted in satisfaction.

Where there is no defence to a note transferred in payment of property sold and delivered, and where it may be enforced in the name of the payee, for the benefit of the holder ; there exists no valid and sufficient reason for rescinding the contract of the sale.

REPORTED by APPLETON, J.

ASSUMPSIT upon an account annexed for

| | |
|---|---|
| Two horses, | $250 |
| Plaintiff's note, | $180,75 |
| | $430,75 |
| And interest from March 18, 1852, | $120,00 |
| | $550,75 |

Also a count for money had and received.

The plaintiff introduced testimony tending to show that on December 2, 1851, one of the defendants called upon the plaintiff and bought the horses, at the sum of $250, for which they turned out a note against Walter Brown & Son and William H. McCrillis, on which a balance of $430,75 was then due, which note, he represented, was the amount due him by them, McCrillis and Browns, and that he supposed it would be paid when it was due. The plaintiff accordingly gave the defendants a bill of sale of the horses, and at the same time gave them his note for the balance, of $180,75, which was paid at maturity to the defendants, the bill of sale also containing a charge of the note.

The drafts mentioned in the Brown and McCrillis note were paid at their maturity, January 20, 1852, by the plaintiff, at or before which time he presented the note of Brown and McCrillis to Mr. Brown for payment, or to be allowed towards the drafts, when Brown refused to pay or allow it.

Cushing v. Wyman.

Thereupon the plaintiff commenced a suit against the defendants, by writ dated March 18, 1852, to recover the same claim as now sued.

That suit was prosecuted by the plaintiff, tried at the October term, 1853, of this court, on the second day of the term, and made law. At the trial of the case at that time, the plaintiff offered to surrender the Brown and McCrillis note to the defendants, and tendered the same to them, and they refused to accept it. The case was by order of court on law, "nonsuited," and is reported in 38 Maine R., 589.

After the said decision, viz.: on the 18th of March, 1856, the plaintiff's attorney gave up the note to one of the defendants, and then on the same day put this writ into the officer's hands for service, and it was served on that day. The writ had been already made and forwarded to Lincoln, from Bangor, to an attorney in Lincoln, with the note, with directions to give up the note, and then to have the writ served, which was accordingly done; the writ having been given to the officer for service, but not until after the note had been surrendered to the defendant.

The plaintiff then proved by Walter Brown, one of the signers of the note, that the note in question had been given for the balance due F. Wyman, Jr., one of the defendants, on a lumbering operation of the previous winter. That soon after the note was given, Wyman again applied to him to supply him for another operation for the then ensuing season; that he consented, upon an agreement between him (Wyman) and Brown & Son, that he should turn out the Brown and McCrillis note, to go toward the supplies; that he should not give credit for it, until it was payable; that in pursuance of that agreement, said Brown & Son did supply the defendants to the amount of two or three thousand dollars; that the amount of supplies furnished, all of which was due and unpaid on December 2, 1851, was $583,77

Amount due March 18, 1852, was      $1406,50

"     "   October 5, 1853, was about   $1700,00

"     "   at the present time,       $302,67

That no sum had as yet ever been credited for or on account of this note, for the reason that it had never been surrendered or offered; and that no sum had ever been paid by the defendants towards the said account, except what had been received for lumber sold, the proceeds of said operation; that as security for these supplies, they had taken from Wyman an assignment of the permit under which they were cutting, and of all logs and lumber cut under it, and they had by virtue thereof, the marketing of the logs; that no settlement had ever been made between Brown & Son and the Wymans, and that, though often urged, the Wymans had never offered to settle with Brown & Son; that after the agreement with Francis Wyman, Jr., he took in his brother, Andrew W., the other defendant, and the two were in the place of Francis, who originally made the bargain; that the makers of the note against Brown & Son and McCrillis had ever been, and are still, solvent.

The T. Cushing drafts, named in the note, were given by the plaintiff for the logs cut by Wyman in the previous winter's operation, and sold by Brown & Son and McCrillis to Cushing: the note being given for the balance due Wyman of the proceeds.

When the note was given up to Wyman, on the day this action was commenced, he took it under the supposition of its being another paper, and on seeing what it was, offered to return it to the plaintiff's attorney, as having been unintentionally received.

*Copy of Bill of Sale.*

FRANKFORT, DEC. 2, 1851.

F. & A. W. Wyman.

Bought of T. Cushing,

| | |
|---|---|
| One span black horses, | $250,00 |
| Note payable January 17, 1852, | $180,75 |
| | $430,75 |

*Contra Cr.*

By W. H. McCrillis and Walter Brown's Note, $430,75

Settled as above.   E. E.     T. CUSHING, per G. B. C.

*Copy of Note.*

$530,75. For value received we promise F. Wyman, Jr., to pay him five hundred and thirty dollars and seventy-five c ents, provided the drafts given by T. Cushing, for the logs cut on No. 2, range 9, are paid.

WM. H. McCRILLIS,

Sept. 29, 1851. WALTER BROWN & SON.

*Indorsed.* Received on within of W. H. McCrillis, one hundred dollars. F. & A. W. WYMAN.

Dec. 2, 1851.

*A. W. Paine,* counsel for the plaintiff.

The right of action was mature before the writ was issued, even though the note was not surrendered until after the writ was actually made. The writ was provisionally made, and not issued until after the right of action was complete. This is right. *Badger* v. *Phinney,* 15 Mass. R., 359 ; *Tufts* v. *Kidder,* 8 Pick. R., 537 ; *Seavie* v. *Lincoln,* 21 Pick. R., 267 ; *Swift* v. *Crocker,* 21 Pick. R., 242 ; *Haskell* v. *Brown,* 2 Fairf. R., 261.

But the question does not arise here, inasmuch as a tender of the note was made in court on October 5, 1853, and refused. This fact puts the objection out of the case.

Was the surrender of the note, or rather the rescision of the contract seasonable ?

The facts are that the trade was made December 2, 1851 ; that the note matured January 20, 1852, and there is no proof that the badness of the note was known to the plaintiff before the maturity or about that time ; that an action *based* on the rescision of the contract was commenced on March 18, 1852, and that on trial of that case on October 5, 1853, the note was surrendered or tendered to the defendants.

Now although the rescision should be made within a " reasonable time," yet in deciding upon the question of " *reasonableness,*" the court will regard that time reasonable which will save the party from loss and reinstate him in the rights with which, by the trade, he parted. In other words, if the party

is placed in *statu quo* with reference to the transaction, not being harmed, the court will regard the act as reasonably done. The *tempus in quo* is but one of the ingredients of the matter; a more important question is, whether by the delay the party has suffered any injury.

And more especially will the court so act, when the party interested has been himself the guilty party in effecting the trade, as the defendants here are. The court will hold them to the strict rule.

Almost all the authorities concur in stating the principle alluded to, in the manner now contended for. *Conner* v. *Henderson*, 15 Mass. R., 321–2.

If he would rescind, &c., he must "put the defendant in the same situation as he was in before the delivery of the article." *Paley* v. *Balch*, 23 Pick. R., 286. " He must put the party in as good a situation as he was before." Chitty on Cont., 276.

" If the offer to reconvey the land would vest in the plaintiffs their original title, so that *substantiallg* they would be in the same situation as before the conveyance," &c. *Holbrook* v. *Bent*, 22 Pick. R., 554.

" He must do it in a reasonable time," to be sure, " and must reinstate the party in the condition he was in before the contract," &c. *Ayers* v. *Hewett*, 19 Maine R., 287.

The party cannot rescind, unless both parties can be put in *statu quo*. *Coolidge* v. *Bridgham*, 1 Met. R., 550.

Where one's own note was taken, it was held that it need not be returned at all. Why? Because it was of no value. The note here was invalid, and only good as a receipt, and if he gets it back in season for settlement, it is enough. Here $1700 was due, when tendered back.

In all the cases, the criterion seems to be this: whether the party (guilty party) can be placed in *statu quo* with reference to the transaction.

But here there was notice by su˙t as early as Marc'¹ 18, 1852, that the plaintiff did rescind the sale. This was sufficient. 2 Sandf., 421; 1 Sandf., 560.

All the facts in this case show that the defendants have not been in any way injured by not having the note surrendered at an earlier day, but that the tender did place them in *statu quo*, and hence was within reasonable time.

According to the agreement, the note was to be paid by supplies. The supplies were furnished. The note not being negotiable, was bound by the agreement. It was then after and on December 3, 1851, an entirely worthless paper, a *nudum pactum*, and good for nothing except as a voucher to be used in the settlement of the account between Brown & Son and defendants. For no other purpose was it worth a cent.

On December 2, 1851, when the plaintiffs took the note, there had been supplied more than the amount of the note, viz.: $583,77. On March 18, 1852, when notice was given, $1406,50; on October 5, 1853, when the note was tendered, $1700.

These figures prove conclusively, that for the purpose — the only purpose that the defendants could use the note, they were furnished with it in all good and seasonable time. No settlement has ever been made—none has ever been attempted between Brown & Son and the Wymans, and they desired none. They have paid nothing on account, by reason of not having the note. In no respect have they been injured, but by a return of the note as stated in the case, they are fully placed in *statu quo*. This is all that was required by the authorities.

Brown & Son and McCrillis, are still responsible, and no loss has been occasioned in this way, even though the agreement with Brown & Son had not existed as testified to by Brown.

A more important question, however, is, whether the agreement testified to by Brown does afford a defense to a suit on the note? or, in other words, was the note on December 2, 1851, such a contract as would support an action in F. Wyman, Jr.'s name against the makers?

The note was not negotiable; more correctly it was not a

note, but a simple contract, and as such, liable to be afterwards altered, discharged or controlled by subsequent agreement of the parties, even though by parol.

The agreement set up by Brown was made with Wyman while the legal holder of the paper, and the paper, when it passed from him passed with all the equities which existed between the parties at that time.

A new equity between one of the makers and the payee, had arisen by this verbal contract between Wyman and Brown & Son, that agreement attached to and really became in effect, a part of the contract, and bound it, so that in any action brought upon that contract in the name of F. Wyman, Jr., the matter might be legally given in defence.

If there could be any question about the validity of the defence while the agreement was executory, that question of doubt was removed upon the performance of it as it was performed by Brown & Son before the sale of the note to the plaintiff, for on December 2, 1851, $583,77 worth of goods had been supplied, being more than the amount of the note. From that time, a perfect defence to the note existed against Wyman, and of course against his assignee.

*E. Kent*, counsel for the defendants.

In the former case between these parties, 38 Maine R., 591, it was decided that "the note of McCrillis and Brown was of value to the defendants, as evidence of indebtedness on the part of the makers, and should have been returned, or an offer to return should have been made before suit."

In the case at bar it appears that, at the earliest, two years nearly elapsed before the offer to return at the trial of that case, and the second offer at the date of this writ, four years and one half after.

I make no question as to the fact that an offer was made before *this* suit was commenced, and I am willing to assume that it was made at the first trial, about two years after the contract for its sale.

*This offer was not in a reasonable time.* The law is well

settled, that when a party elects to rescind a contract for fraud or misrepresentation, he must restore the thing received by him, and put matters back exactly as they stood. This principle cannot be disputed. It is settled in the case between these parties, and has been decided in numerous cases. *Norton* v. *Young*, 3 Greenl. R., 30, and other cases; it is unnecessary to cite them.

This must be done in a reasonable time, and what is a reasonable time, is a question of law on the facts.

In *Norton* v. *Young* it was held that a return, after eleven months, of the confession note, was not in a reasonable time, and no one contended that it was.

In *Atwood* v. *Clark*, 2 Greenl. R., 249, the doctrine is fully established, that the law requires that where there is no express contract as to the time in which an act is to be done, it must be in a reasonable time.

The case of *Kingsley* v. *Wallace*, 14 Maine R., 57, held that *two months* was not a reasonable time, even where the party had expressly reserved a right to give up the trade.

The plaintiff then can only fall back upon an assumption that there is another condition, viz., that it must appear that the defendants suffered injury by such non-return, or that on the case no injury to them arose, by the delay.

In the first place, I deny the doctrine, and, secondly, I say injury did arise.

In *Conner* v. *Henderson*, 15 Mass. R., 319, it was held that where there was the least value, even nominal, as old lime casks, they must be returned.

In this same case, in 38 Maine R., this court says, this note of McCrillis and Brown was of value to the defendants, and should have been returned, and the law adds, in all such cases, "in a reasonable time." 2 Greenl. R., 254.

In the case at bar, the note was of full value, and is so now; and we wanted it, to have it passed to our credit on the books of Brown & Son.

The cases of *Ayers* v. *Hewitt*, 19 Maine R., 280, and *Thurston* v. *Blanchard*, 22 Pick. R., 18, were cases where the par-

ties' *own* notes were not returned. But they are carefully guarded, and apply only to the case of a party's own note, and that with hesitation, where the note was negotiable. In our court, the recognition of *Thayer* v. *Blanchard* is quite doubting. But those cases expressly recognize the doctrine, that where other property or the notes of third persons are given, they must be returned.

The plaintiff then fails, because he did not return this note in a reasonable time.

Can the plaintiff maintain this action of *assumpsit* on this state of facts? If he has any cause of action, is it not trover or replevin for the goods delivered us? In this action he *affirms* the contract, sues for the price of his horses, and money had and received for the amount of his note, for $187, (or thereabouts,) which he paid. Is this *rescinding* the contract, or is it at best mixing up *affirmation* and *rescision* in one case? If he had an election in a given state of facts to rescind a bargain, or affirm it, and go for the guarantee or warranty, or damage for deceit; can he do both? The law gives him an election. He sues for the price of the horses—in fact, attached them in the first suit—affirms the sale of the horses. He should have brought trover or replevin. The bargain was the note for the horses. The bargain cannot be rescinded and in force both. He could have had trover also to recover his note. But he does not take that course. He goes for the price of his horses, and to recover back money paid on his note. He should have brought trover for his note, or defended against it. He cannot say that the note he received was not what it purported to be—was not good against the signers, and therefore was *no payment.* It was received in payment, and the court says, on this case, 38 Maine R., 591, that "the defendants were liable to the plaintiff, on an implied guarantee, that the amount purporting to be, was actually due." Then he should have sued on that guarantee, especially if he *affirms* the sale, as he does, in this case.

I submit that this action cannot be sustained.

He has in no event a right of action against us, because he should have collected the note of Brown & Son. He took their allegations to be true, which we deny. By dropping Brown & Son, and suing us, they made Brown a witness, which was of great importance, as the law then stood. In a suit on that note, Brown could not have been a witness. If he was in doubt, he could have called on us to assume the prosecution, and bring an action in the name of F. Wyman, Jr.

But waiving all other points, we say, that upon his own showing, the plaintiff has no case, because the agreement, as set forth by him, was *executory* and not *executed.*

It is clear law that all executory contracts may be rescinded by the parties to them. *Johnson* v. *Reed et al.,* 9 Mass. R., 84.

The question here is, whether an understanding or agreement to turn in at a future time a note in payment of supplies *thereafter* to be furnished, but not to be passed to the credit until a fact in doubt then, is settled, viz.: the payment of the note, is an *executory* or *executed* contract. Is it anything more than an agreement to pay the money, if paid on the note, to be passed to his credit? All in the future.

All depended upon the contingency whether the Cushing drafts were paid or not. If not paid, then Brown & Son were not to take the note. The whole bargain, as stated in the report, amounts to this only, (admitting it to be true.) If the note of Brown and McCrillis becomes payable by the fulfillment of its condition, viz., payment of Cushing drafts, in January, 1852, (when the case finds they were payable,) then, and not until then, Wyman is to turn out this note to Brown & Son, and they are to receive and credit it. Wyman was not bound to do it, and Brown & Son not bound to receive it, until this contingency happens. All is executory.

Now, as a *sale* of this note to Brown & Son, there are several fatal objections. A sale must be completed, or it is no *sale.* It may be an agreement to sell. Here there was no delivery, and none to be made until a contingency happens.

" Property does not pass absolutely, unless the sale be completed, and it is not completed until the happening of any event expressly provided for." Parsons on Con., vol. 1, p. 441, and cases there cited.

A delivery as against a subsequent purchaser is necessary to transfer property. Ib. *Houdlett* v. *Talman*, 14 Maine R., 400, and numerous other cases.

APPLETON, J. On the 29th of September, 1851, Messrs. Brown & Son and William H. McCrillis gave Francis Wyman, Jr., one of the defendants, a note of the following tenor:

$530,75. For value received, we promise F. Wyman, Jr., to pay him five hundred and thirty dollars and seventy-five cents, provided the drafts given by T. Cushing, for the logs cut on No. 2, range 9, are paid.

WM. H. McCRILLIS.

Sept. 29, 1851.             WALTER BROWN & SON.

On the 2d of December following, the above note was transferred, by the indorsement of the defendants, to the plaintiff, and in consideration therefor they received of him one span of black horses, valued at $250, and his note for the difference between their value and the note then transferred, which at its maturity was duly paid.

The notes of the plaintiff, Cushing, referred to in the note of McCrillis and Brown & Son, were paid by him at their maturity, on the 20th of January, 1852, *at or before* which time he presented their note, received from Wyman to Brown & Son, for payment, or to be allowed towards his drafts then maturing, which, for reasons disclosed in the testimony of Walter Brown, they declined doing.

Walter Brown, one of the firm of W. Brown & Son, testified that the note of September 29, 1851, had been given for the balance due F. Wyman, Jr., one of the defendants, on a lumbering operation of the previous winter; that soon after the note was given, Wyman again applied to him to supply him for another operation for the ensuing winter; that he

at first declined, but finally consented upon an agreement between him (Wyman) and Brown & Son, that he should *turn out the Brown and McCrillis note* (the whole of it) *to go towards supplies; that their firm should not, however, give credit for it until it was payable, according to its condition;* that in pursuance of such agreement, Brown & Son did supply the defendants with two or three thousand dollars; that the amount of supplies furnished and remaining due and unpaid December 2, 1851, was $583,77; that the amount due and unpaid March 18, 1852, was $1406,50; that the amount due and unpaid October 5, 1853, was about $1700; that the amount due and unpaid at the time of the trial, April, 1857, was $302,67; that *no sum had as yet been credited for or on account of this note,* for the reason that it had never been offered or surrendered to them; that no sum had ever been paid by the defendants toward this account, except what had been received from the lumber sold, being the proceeds of said operation; that as security for these supplies, they had taken an assignment of the permit under which they were cutting, and of all logs and lumber cut under it, and that they had, by virtue thereof, the logs to market; that *after the agreement with Francis Wyman, Jr.,* he took as partner his brother, Andrew W. Wyman, the other defendant, and the two were in the place of Francis, who originally made the bargain, that the goods were charged to the Wymans; that though often urged, they had never offered to settle with Brown & Son, and that the makers of the note, Brown & Son and McCrillis, were, and still are, solvent.

The plaintiff insists that these facts disclose a good defence to the note of Brown and McCrillis; that the note having been paid, was valueless at the date of its transfer; that this being the case, he had a right to rescind the contract; that having this right, he seasonably gave notice to the defendants of his intention so to do, and tendered to them the note in question, and demanded his property; and the same not having been surrendered on demand, that he can main-

tain the present action, which is assumpsit, for the price of the horses, and for the money by him paid.

Assuming the offer to rescind seasonably made, which is a matter of grave doubt, the inquiry arises whether this form of action can be maintained for the value of the horses, the title to which, if the rescision was valid, reverted to the plaintiff. In such case there is neither an express sale, nor any facts shown from which a promise can be implied. The defendants have made no new bargain, and the original one has been rescinded. If the contract was legally rescinded, the defendants, by refusing to restore the property, became wrong doers, not purchasers. The rescision must be entire, not partial.

But waiving all merely technical objections, the important question recurs, whether the facts disclosed in the testimony of Brown show any defence to the note of McCrillis and Brown & Son, and thus justify the plaintiff in his attempted rescision. If the note of September 29, 1851, transferred to the plaintiff, has not been paid, or there was or is no valid, subsisting defence to it, he can have no grounds upon which to rescind. The rights of the parties depend upon the testimony of Brown, and whether that shows a defence to the note.

The agreement between the parties, as stated in his testimony, was *purely executory.* Nothing is better established, by the entire concurrence of authorities, than that an executory agreement would constitute no bar to a suit upon a note. In *Cary* v. *Bancroft,* 14 Pick. R., 315, a negotiable note was made to the plaintiff by the defendant, who held a note made by the plaintiff, but not having it with him at the time, it was agreed that the two notes should be set off one against the other, so far as the smaller would pay the larger. It was there held that this agreement was executory, and therefore was not an extinguishment of the smaller note. In reference to this agreement to offset, so far as the smaller note would pay the larger, SHAW, C. J., said, that "if avail-

able at all, it was an executory contract, requiring some further act to be done before the one would operate as payment or extinguishment *pro tanto* of the other." In *Richardson* v. *Cooper*, 25 Maine R., 450, TENNEY, J., says, " in the case at bar, it was agreed by the parties and the witness, that an exchange of their several claims should be made, *which*, *if made*, would have been a discharge of the contract declared on; but this contract not being present at the time of the agreement, the exchange did not take place. Something further was to be done, to make this oral agreement effectual; it was executory; until executed, all former liabilities remained." "It appears," says TINDAL, C. J., in *Bagley* v. *Homan*, 32 E. C. L., 379, "by a long train of authorities, commencing with that of Dyer, 356, that a plea of accord, to be a good plea, must show an accord which is not executory at a future day, but which ought to be executed, and has been executed, before the action brought." In that case the court came to the conclusion that a plea of an accord executory, made upon mutual promises, was bad. In the case before us, no credit was to be given for the note until it should, after its maturity, have been turned out to the firm of Brown & Son, and by them passed to the credit of the Wymans, which was never done. 1 Ev. Pothier, 339; *Goodrich* v. *Stanley*, 24 Conn. R., 623.

The note in question was assigned to the plaintiff before its maturity, and on the 2d of December, 1851. At this time the defendants were indebted to the firm of Brown & Son, in the sum of $583,77, which exceeded the amount due on the note. Had the makers of the note, at that time, any right of set off, which would have been available by way of defence to a suit on the note; or had the same been transferred to or paid by the makers, or either of them; or was there any valid or subsisting agreement which would constitute a defence to the same?

The note was running to F. Wyman, Jr. The supplies were furnished by Walter Brown & Son, and were charged to F. & A. W. Wyman. A suit upon the note must have

been in the name of F. Wyman, Jr.   In such suit it is apparent that the goods furnished could not have been successfully filed in set off, because the parties furnishing them were not the makers, and the parties to whom they were furnished were not the payees of the note.

The note having never been transferred by assignment or delivery to the makers or either of them, they could claim no title to it in either of those ways.

The note was not paid on the 2d of December, 1851, although goods to a larger amount had been furnished at that date.   To enable a party to set up that defence, there must be the concurring intention of the party making and the party receiving the payment, to one and the same thing— that is, that there be a payment.   " The effect of a payment," says Pothier, part 3, ch. 1, art. 14, s. 6, " is to *extinguish* the obligation and everything accessory to it, and to liberate all the debtors of it."   But the note of McCrillis and Brown & Son was neither paid nor extinguished, nor intended to be. Brown testifies that their firm was to furnish supplies, but that they were not to give credit for the note until it was payable, according to its condition.   If the drafts of Cushing, mentioned therein, should not be paid, the note was not to be transferred.   The goods were charged and delivered to F. & A. W. Wyman, and they, as purchasers, were liable therefor.   The note was not thereby paid, nor intended to be, nor were the goods delivered or received in payment thereof.   No credit had then been given for the note, nor had it been transferred.   The note then being in full force, was neither paid nor extinguished, but remained in full force, and under the legal control of Wyman.   Whether Wyman would thereafter transfer it to Brown & Son was a matter resting simply in agreement, but which in no way affected the question of payment.

At the maturity of the note, there was due to Brown & Son, from F. & A. W. Wyman, an amount exceeding the note.   But before that time it had been transferred to the plaintiff, for a full and adequate consideration, without no-

tice. Was there then or is there now any defence to a suit upon the note, in the name of the payee, and for the benefit of the plaintiff?

It has been seen that no payment was made before the maturity of the note, nor any valid agreement entered into by which the makers were discharged from liability. The goods previously delivered to F. & A. W. Wyman were not for the purpose of paying the note, and they were not received under the expectation that it was thereby paid. The risk and the ownership and the legal right of disposition of the note of Brown & Son and McCrillis, remained with Wyman, who would alone suffer in case of the insolvency of the makers.

After the maturity of the note, there is still less ground for the allegation of payment. The note had been transferred before maturity; and Brown & Son knowing of its assignment, could not defeat the rights of the assignee, if they had wished.

No specific goods were delivered or received at any time as in payment. The note, therefore, was not paid.

If any were delivered with that design, and received for that purpose, of all which there is no proof, the goods thus specifically delivered were those first in time. But the case finds that the whole amount of the large indebtedness of the Wymans has been discharged by the sales made by Brown & Son, of their lumber, excepting the sum of $302,67.

The law of appropriation of payments is well settled. The money received from the sales of the lumber of the Wymans must be appropriated to the discharge of the account of Brown & Son, in the order of its indebtedness. The goods first delivered would be first paid for, so that there would be no outstanding indebtedness, which upon any grounds can be applied to the payment of the note. It was held in Trescott v. King, 2 Selden, 147, that in case of a running account, where there is no specific appropriation of payments, they must be applied in general upon the first items of indebtedness, though the creditor may hold security for the

10

payment of those items, and none for the final balance of the account.

The note of the 29th of September, 1851, had two signers. The agreement set forth in the testimony of Brown was one by which one of the signers was to be the sole debtor, and to pay the debt, if it was anything. In *Lodge* v. *Dicas et al.*, 5 E. C. L., 397, there was an agreement that one of the partners should take upon himself to discharge a debt to A., and A., upon being informed thereof, agreed expressly to exonerate the other partner from all responsibility, yet it was held that this agreement was no defence to the latter, in a suit by him against both partners. "It is for the defendant, Dicas," says BAGLEY, J., "to show he was discharged. A release is one mode; another is satisfaction. It is clear that the former has not been given, and an agreement by the plaintiff to abandon a claim, unless there be a consideration shown, is a mere *nudum pactum*. Now what consideration is there in the present case." It was, however, held in *Thompson* v. *Percival*, 27 E. C. L., 241, that the acceptance of a bill of exchange by one of two debtors, given and received in satisfaction of the debt, would be a good discharge.

So the civil law has its novation by which a new is substituted for an old debt, which latter is extinguished by the new one contracted in its stead. "The effect of a novation is, that the former debt is extinguished in the same manner as it would be by a real payment. Where *one* of several debtors in *solido* alone contracts a new engagement with the creditor, as a novation of the former debt, the first debt being extinguished by the novation, in the same manner as it would have been by a real payment, all *his* co-debtors are equally liberated with himself. And as the extinction of a principal obligation induces that of all accessory obligations, the novation of the principal debt extinguishes all accessory obligations, such as those of sureties." 1 Ev. Poth., part 3, ch. 2, art. 5.

But no agreement is proved, which, upon the principles

Cushing *v.* Wyman.

of the cases to which reference has been made, or which, according to the doctrines upon which novation rests, would be a bar to the note. It is not in proof that McCrillis was to be discharged, or that Brown & Son were to be the sole debtors to Wyman, and to pay this note unconditionally.

Neither could a defence to the note be established on the ground of accord and satisfaction. Accord, without satisfaction, would be no answer. *Caxen* v. *Chadley*, 10 E. C. L., 270. If a substituted agreement be shown, it must appear that its performance was accepted in satisfaction. *Flockton* v. *Hall*, 71 E. C. L., 1039. The payments must be received, as well as made, in satisfaction of the debt, to show accord and satisfaction. *Webb* v. *Weatherby*, 27 E. C. L., 474.

Now in the case before us there are no specific payments which at any time appear to have been made or received in satisfaction of the note due Wyman, or which would sustain the plea of accord and satisfaction.

As the testimony of Brown discloses no defence to the note of McCrillis and Brown & Son, and as, for aught that appears, it may be enforced by Cushing in the name of Wyman, but for his benefit, there exists no valid and sufficient reason for rescinding the contract sought in this action to be rescinded.

The plaintiff failing to show any cause of action, must submit to a nonsuit.

*Plaintiff nonsuit.*