FREMONT COUNTY, IOWA, v. FREMONT COUNTY BANK, J. H. McDONALD and CLARK CARY, JERRY LOCKETT, A. V. PENN, C. J. ESDEN, Appellants.

**Banks and banking:** SOLVENCY: EVIDENCE: COUNTY DEPOSITORY: LIABILITY OF SURETIES. In this action upon a bond given by a bank to indemnify a county against loss of county funds deposited therein, the evidence is held to support a finding of the solvency of the bank at the date a check was drawn thereon by a retiring county treasurer in favor of his successor; and also at a subsequent date when the succeeding treasurer deposited the check with the bank; and, until after the board of supervisors designated the bank as a county depository.

It is also held that as the bank was solvent when the check was deposited and continued so until the resolution of the board designating it as a depository, the sureties on the bond were liable for any amount remaining on deposit at the time of the action of the board, not exceeding the amount of the bond, regardless of whether the treasurer had been authorized to make a deposit.

And it is also held that as the check was treated both by the supervisors and the bank as cash and accepted by the bank as a part of the county funds, it should be treated as cash so far as the surety's liability is concerned.

**Depositories:** PAYMENT OF FUNDS. To constitute payment the money or other thing must pass from the debtor to the creditor for the purpose of extinguishing the debt, and must be accepted for that purpose: So that where a bank, rightfully in possession of county funds and under no obligation to pay them over to the treasurer until required to do so, but upon request brought the funds into the office of the county treasurer for the purpose of checking his books with the books of the bank, in a settlement between the county and the treasurer, after which the funds were taken away by the bank and no entries were made in the treasurer's books, there was no payment to the treasurer of such county funds.

**Same:** ACTION AGAINST SURETIES: RECOVERY OF INTEREST: PLEADING. Where a bank has breached its bond given to indemnify a county for its deposit of county funds, by refusal to pay the same over to the county, and the sureties on the bond are liable for the

deposits to the extent of the indemnity, with interest thereon, the county may recover interest in a suit against the sureties, where the amount claimed in the petition is large enough to include interest, by the way of damages resulting necessarily from the breach of contract; and it is not essential to recovery of the interest that it be expressly prayed.

*Appeal from Fremont District Court.*—HON. N. W. MACY, Judge.

THURSDAY, DECEMBER 16, 1909.

ACTION on a bond resulted in judgment against defendants. The facts are recited in *Fremont County v. Fremont County Bank et al.,* 138 Iowa, 167. The defendants appeal.—*Affirmed.*

*W. E. Mitchell* and *Wm. Eaton,* for appellants.

*W. H. Norcutt* and *T. S. Stevens,* for appellee.

LADD, J.—On January 4, 1904, H. C. Byars succeeded H. E. Hawley as treasurer of Fremont County. As a part of the funds turned over to him by his predecessor was his (Hawley's) check on the Fremont County Bank for $1,095.59. On the 7th of the same month Byars deposited this check as a county fund with that bank, taking a pass-book with credit entered accordingly therein. A bond in the usual form was executed by the bank with sureties on January 5, 1904, and indorsed as approved by the treasurer and chairman of the board of supervisors, but the resolution of the board authorizing the deposit of public moneys therein was not adopted until May 3d of that year. On the former hearing the principal and sureties on this bond were held to be liable "for all funds then on deposit or which might subsequently be added thereto to the extent of $1,000." Upon remand the answer was

amended by alleging that on June 7, 1907, the Fremont County Bank paid to the treasurer of the county the entire amount then on deposit, and had received none of the moneys of the county since. The plaintiff, in an amendment to the reply, interposed a denial, and the cause proceeded to trial again, resulting in a judgment against defendants.

I. On the former hearing the evidence was quoted at considerable length, and the conclusion reached that it failed to establish the bank's insolvency on January 4, 1904, when Hawley's check on it was received, or three days later when the deposit was renewed by the treasurer, Byars, or at any time prior to the adoption of the resolution designating the bank as a depository.

1. BANKS AND BANKING: solvency: evidence: county depository: liability of sureties.

On the last trial other evidence was adduced, and that of McDonald was more in detail. The latter was sole proprietor of the bank, doing the business as an individual under the assumed name of the Fremont County Bank. No property or money had been set apart by him for the separate use of the bank, and yet it continued as a going concern until some time after June 7, 1905. Insofar as disclosed payment of neither checks nor drafts had been refused until subsequent to adoption of the board's resolution designating it as a depository. Nor was the evidence such as to lead necessarily to the conclusion that the assets of McDonald were insufficient in value to pay his debts within a reasonable time. See *State v. Cadwell,* 79 Iowa, 432. Undoubtedly his financial affairs were much involved. All the realty and a set of abstract books owned by him were heavily incumbered. The proceeds of his homestead when sold satisfied the mortgages against it, as did the bank building and lot. He owned fifty-six acres of land incumbered for $2,100, and testified that he got nothing out of it in excess of the mortgages, but whether the land was worth more was not shown. He owned three hundred and

fifty acres of land subject to a mortgage of $10,000, which he either transferred to satisfy a note of $1,000, or exchanged for a stock of hardware, but no evidence of its value was adduced. His abstract books were incumbered for $2,700, but, aside from the abstract book of the city of Hamburg, were worth $3,000. The value of that of the city of Hamburg was not proven, save that it was "worth a good deal." He also owned and was in possession of two promissory notes, one of $3,000 and another of $600, "that were to be paid that were not."

On the other hand, sureties had paid for him a note of $300, another of $800, and still another of $1,200, and he owed one Wilson $1,000. The latter obligations are more than offset by the two notes previously mentioned, and the margin on the abstract books and lands might have led the trial court to the conclusion that in the prudent management of his affairs all of his obligations might have been met within a reasonable time, and that his financial condition was such as to justify his testimony that "on January 4, 1904, I felt that the property I had was worth more than the loans that were against it. I felt that I was solvent, but hard-pressed for cash." The issue was for the trial court; and, as its findings must be accorded the same effect as is given to the verdict of a jury, we are not inclined to disturb the conclusion it must have reached. If the bank was solvent January 7th, when the Hawley check was deposited, and so continued until the adoption of the resolution designating it as a depository, as the district court must have found, then the defendants were liable on the bond for any amount remaining on deposit at that time and exceeding $1,000, and this regardless of whether Hawley had been authorized to deposit the county's money in the Fremont County Bank or not. Hawley's check thereon had been accepted by the board of supervisors as equivalent to cash, and charged to Byars as such, and the latter deposited it with, and it was accepted by, the bank as

a part of the county funds. As it was at that time actually equivalent to cash, the deposit should be treated as such. This was the conclusion reached on the former appeal, and finds approval in *Independent School District of Sioux City v. Hubbard,* 110 Iowa, 58.

II. Appellants contend that the deposits in the bank have been returned to the county treasury. It appears that the board of supervisors made settlement with the treasurer June. 7, 1905, and for this purpose each bank in which the moneys of the county had been deposited was required to bring the total amount of such deposits to the county treasurer's office for the purpose of being counted and checked with the treasurer's books and the books of the bank. The several sacks containing money were placed on a table, separately counted and returned to the respective sacks, and taken away by the banks bringing them. No entries were made in the treasurer's books, and, save as related, the money did not come into his hands. To meet this emergency McDonald borrowed $1,300 of A. P. Wightman, for which he executed a note with Byars, the county treasurer, as surety. Wightman gave his check for $1,300 on the National Bank of Sidney to McDonald, who procured the money of that bank, and with $49.89 left it in a sack on the table as above indicated. There is some confusion in the testimony as to who took the money from the bank to the treasurer's office, but as in any event this was done for the Fremont County Bank, it is not of consequence who the messenger was, though probably, as said, it was McDonald. The money was counted, and on the following morning Wightman called at the treasurer's office and took the money back to the National Bank, and at that time possibly Byars remarked that it would pay the note. Neither McDonald nor the bank in the name of which he did business parted with any money, nor was its account or that of the treasurer changed by the transaction.

2. Depositories: payment of funds.

The manifest design was to enable McDonald to produce the money for the purpose of being counted, without any intention that it should pass to the treasurer as payment of the amount due the county. Ordinarily, to constitute payment, the money or other thing must be received, as well as paid in satisfaction of the debt. *Cushing v. Wyman,* 44 Me. 121; *Jameson v. Carpenter,* 68 N. H. 62 (36 Atl. 554); *Tuttle v. Amstead,* 53 Conn. 175 (22 Atl. 671); *Blair v. Harris,* 75 Mich. 167 (42 N. W. 790); *Galbraith v. Starks,* 117 Ky. 915 (79 S. W. 1192).

The authorities seem to agree that to constitute payment the money or other thing must pass from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose. This rule is applicable to the facts as recited, and to the situation in the case at bar. The banks were rightfully in possession of the funds of the county deposited with them, and were not under obligation to pay them over to the treasurer until so required. They might carry these to the treasurer's office for the purpose of being counted, without parting therewith to the treasurer, or so intending, and this is what they did. Neither the treasurer nor the board of supervisors exacted more, but allowed the depositories to retain what they had. It was not in fact, nor intended to be, a return of the moneys to the treasury of the county; and therefore was not a payment.

Appellants argue, however, that in such a situation the question of intent is not involved, and rely on *Independent School District of Sioux City v. Hubbard,* 110 Iowa, 58, 65, and other like decisions. But that case proceeded on the theory that a school treasurer was without authority to allow the funds of the district to pass from his possession, even by depositing with a solvent bank, so that, whenever funds of the district were produced, it was the treasurer's duty to retain them, and to allow any one to withdraw them was a conversion. Here the funds of

the county were rightfully in the hands of the depositories designated by the board of supervisors as such. Both the board and the treasurer might lawfully allow such funds to so remain, and, as such was the intention of the board, treasurer, and banks, we do not think that the circumstance that the moneys deposited with the several banks were brought in the treasurer's office to be counted merely amounted to a payment thereof to the treasurer. Not being a payment, it was no concern of the county where or how the money was procured, save possibly as the transaction might estop those producing it from denying that it was public money received from the treasury, a point not in issue. As there was no payment, the bank was not relieved from liability, nor the sureties on the bond.

III. In entering judgment the court included interest on the $1,000 from the date payment was refused by the bank, although the prayer of the petition was for the amount alleged to have been deposited; that is "for the sum of $1,349.89 and costs." Though the same amount was alleged to have been deposited with the bank, the prayer for recovery is not limited to that only, and in fact exceeded the sum for which judgment was rendered. So that the inquiry is whether an express allegation of interest is essential to its recovery. The discussion in *David v. Conard*, 1 G. Greene, 336, indicates that such allegation was thought essential in an action on account, but the only error assigned was "that judgment was rendered for a greater amount than is claimed in the declaration," and the decision that this was error was based on the practice "established by decisions in our territorial Supreme Court." In support of this *Roberts v. Smith*, Morris, 426, is cited, which held that where a specific amount is claimed without any mention of interest, this limits the amount of recovery. The same rule was laid down in *Krause v. Hampton*, 11 Iowa, 457. In *Stadler v. Parmlee*, 10 Iowa, 23,

3. SAME: action against sureties: recovery of interest: pleading.

and also in *Anderson v. Kerr*, 10 Iowa, 236, judgment was demanded for the face value of the notes, with interest, and the court held that this limited recovery to such value, with interest from the beginning of the suit. To the same effect see *Barton v. Smith*, 7 Iowa, 85; *Lyon v. Byington*, 10 Iowa, 124; *Haven v. Baldwin*, 5 Iowa,. 503; *Butcher v. Brand*, 6 Iowa, 235; *Hefferman v. Burt*, 7 Iowa, 320. But in none of these cases did the question arise as to whether, where the demand was for a sufficient amount, interest which had accrued on the claim might be included in the judgment, though not expressly alleged. This was done in *Dawson v. Graham*, 48 Iowa, 378, though apparently without considering the point. The bond of defendants was breached when payment of the deposits to the county treasurer was refused by the bank, and it and the sureties became liable for the amount of deposits to the limit of the indemnity, with interest thereon at the rate of six percent per annum from that day. *Ellyson v. Lord*, 124 Iowa, 125. And if the amount claimed in the petition was enough to include such interest, it was not necessary to specifically assert the right to recover the same in order to entitle the plaintiff to such relief. It is said in Chitty's Pleading that such damages as result necessarily from the breach of contract need not be specifically laid.

In *Peterson v. Mannix*, 2 Neb. (Unof.) 795 (90 N. W. 210), the court observed that "A plaintiff may recover interest upon debts or claims which, without any contract therefor, bear interest as a matter of law, upon sufficient allegation of such debts or claims and prayer for the amount thereof and interest. The recovery can not exceed the amount prayed for; but, within that sum, it may include interest, in such cases without any allegation that it is due." For cases applying the rule as stated, see *Harwood v. Larramore, Admr.*, 50 Mo. 414; *McConnel v. Thomas*, 3 Ill. 313; *March v. Wright*, 14 Ill. 248; *Wash-*

*ington v. Planters' Bank,* 1 How. (Miss.) 230 (28 Am. Dec. 333); *Glenn v. Cockey,* 16 Md. 446; *Allen v. Lyman,* 27 Vt. 20; 22 Cyc. 574; 11 P. & P. 435. We are of opinion that in such a case the interest may be regarded as an incident to the liability resulting from the breach of contract, and may be included in the judgment, though claim therefor is not expressly asserted in the petition, where the *ad damnum* is laid large enough to include it.

Nor does it appear to be essential to the recovery of interest on a claim based on breach of contract from the commencement of the action that it be expressly prayed. *Cassacia v. Ins. Co.,* 28 Cal. 629; *Whitaker v. Pope,* 2 Wood, 463, Fed. Cas. No. 17,528. It follows that there was no error in the inclusion of interest in the judgment. A decision of the other point argued could not alter the result, and for this reason is not considered. The judgment is *affirmed.*