Casper Schwab, Appellant, v. C. E. Roberts et al., Appellees.

No. 43001.

OCTOBER 23, 1935.

REHEARING DENIED FEBRUARY 15, 1936.

. Thos. J. Buckley, and L. V. Gilchrist, for appellant.

P. W. Harding, and Robertson & Robertson, for appellees.

KINTZINGER, C. J.—On October 22, 1931, plaintiff and the defendants entered into a contract of sale for about 213 acres of farm land in Crawford county, Iowa. Under the terms of the

contract, the defendants agreed to pay plaintiff therefor the sum of $7,000 and take the land subject to a mortgage for $17,000. The $7,000 was payable as follows:

"One dollar on the execution of the agreement; one Thousand Dollars on June 1, 1933; one Thousand Dollars on June 1, 1934; fifteen Hundred Dollars on June 1, 1935; fifteen Hundred Dollars on June 1, 1936; nineteen Hundred Ninety-nine Dollars on June 1, 1937, with interest at the rate of six per cent."

So much of the contract necessary for a consideration of this case is the following:

"And the party of the second part shall also annually pay taxes and assessments * * * on said property as they become due or before they become delinquent * * *. And it is expressly agreed by and between the parties hereto *that the time and times of payment of said sums of money, interest and taxes as aforesaid is the essence and important part of the contract,* and that if any default is made in any of the payments or agreements above mentioned to be performed by the party of the second part; * * * this agreement shall be void, and of no effect, and the party of the second part shall have no claim in law or equity against the party of the first part, nor to the above mentioned real estate nor any part thereof, and any claim or interest, or right the party of the second part may have had hereunder up to that time by reason thereof, or of any other payments and improvements made hereunder, *shall, on * * * such default, cease, * * * and become forfeited* without any declaration of forfeiture, re-entry or any act of the party of the first part.

"The parties of the second part agree * * * to pay all the interest due on one certain real estate mortgage, in the sum of $17,000, which * * * draws five per cent interest * * * as said interest becomes due * * *.

"Second parties expressly agree that if default be made in the payment of any or all of the items above set forth or any of the items set out in the body of this instrument then in that event this agreement and contract shall become null and void."

A first supplemental agreement was made to this contract on February 23, 1933, whereby, among other things, the time of paying the $6,999, above referred to, was extended two years.

This supplement also contained the following provision: "Nothing contained herein shall effect or change the rights of the parties to said original contract except as modified or changed herein." A further consideration of the terms of this supplemental agreement is unnecessary for a determination of this case.

Thereafter, on January 5, 1934, a second supplemental agreement was entered into containing the following provisions:

"This agreement is made in connection with real estate contract entered into between the parties hereto on the 22nd. day of October, 1931, and a supplemental agreement entered into * *. * on the 23d day of February, 1933, and it is agreed that this agreement is a supplemental agreement *and made in connection with and made a part of the above mentioned agreements.*

"That in said real estate contract * * * of October 22, 1931, there is a provision that the second parties will pay to first party $1,000. on June 1, 1933, and that the supplemental agreement entered into on the 23d. day of February, 1933, provided for an extension of payment of said $1,000. to June 1, 1935, * * *.

"It is agreed that for and in consideration of the agreements and stipulations herein mentioned, * * * that the second parties pay to the party of the first part the sum of $300. on June 1, 1934, and that said payment of $300 is to be applied on the principal of the $1,000. payment due June 1, 1933, as provided in said real estate contract of October 22, 1931.

"It is agreed between the parties hereto that *this supplemental agreement will not alter or vary the terms of said real estate contract entered into October 22, 1931, nor the supplemental contract of February 23, 1933,* except the payment of $300. mentioned herein."

The undisputed evidence shows that the defendants failed to make the $300 payment on June 1, 1934, as agreed upon in the second supplemental agreement, or any interest thereon. The evidence also shows that a few weeks prior to the time said $300 became due, plaintiff notified appellee Roberts that he would expect payment thereof when due. Appellee Roberts testified that appellant told him before the money became due that

he could pay it into the Dunlap Savings Bank, and that a few days' delay would make no difference. Appellant denies that he ever authorized Roberts to pay this or any other money into the bank. On the contrary, he says he told him he was attending to his own business.

On June 9, 1934, after the money was due, appellant duly served a 30 days' notice of forfeiture upon the defendants, as provided by section 12390 of the Code, that if the money due was not paid within 30 days from the date of the notice he would declare the contract forfeited.

Thereafter, on July 6, 1934, appellee Roberts deposited $300 to his own credit in the Dunlap Savings Bank, and on the afternoon of July 9, Roberts left his check of $300 with the cashier of the Dunlap Savings Bank, payable to appellant. This check, however, had the following indorsement thereon: "For credit on $1,000. note due June 1, 1934." On giving this check to the bank, appellee Roberts directed the cashier thereof to deliver it to the appellant when he came in, and then only on condition that he produce the note referred to in the check and credit the amount of the check thereon. The cashier thought he was acting for appellee, and said he would not have delivered the check to appellant unless the $1,000 note was produced and the credit made thereon. The record shows that there was no such note in existence. This check was not delivered to the bank until the afternoon of the last day of the expiration of the 30-day notice of forfeiture. After delivering the check to the cashier, appellee Roberts had some one telephone to appellant's house to advise appellant that *"that money was in the bank"*. This message was received by appellant's daughter and conveyed to him about 5 o'clock that evening.

Upon this record the lower court found that appellee Roberts had deposited in the Dunlap Savings Bank a sufficient amount to meet the payment of the $300 due on June 1, 1934, and held, that although the money was not paid to appellant within the 30 days, the delivery of the check to the bank was a tender of payment of the amount due on the contract, and held that defendants had not forfeited their rights in the real estate. From this ruling, plaintiff appeals.

I. Appellant claims that the delivery of this check requiring a credit indorsement on a certain nonexistent note did not

constitute payment within the time required by the notice of forfeiture.

 Appellees contend that the supplemental contract requiring the payment of $300 on June 1, 1934, did not make the time of payment *the essence of the contract*; that such contract contained no forfeiture clause, and that appellant was, therefore, not entitled to a forfeiture.

Section 12389 of the Code relating to forfeitures provides:

"A contract which provides for the sale of real estate * * * and for the forfeiture of the vendee's rights in such contract in case the vendee fails, in specified ways, to comply with said contract, shall, nevertheless, not be forfeited * * * except as provided in this chapter."

Under this statute a forfeiture cannot be declared unless the contract of sale provides therefor. This is also the holding of our court. Van Vranken v. Cedar Rapids & M. R. R. Co., 55 Iowa 135, 5 N. W. 197, 7 N. W. 504; Cody v. Wiltse, 130 Iowa 139, 106 N. W. 510; Reiger v. Turley, 151 Iowa 491, 131 N. W. 866; Waters v. Pearson, 163 Iowa 391, 144 N. W. 1026; Marshall v. Pratt, 195 Iowa 741, 185 N. W. 5. An examination of these cases, however, discloses that the contracts or extension agreements referred to therein contain no provision of forfeiture for nonpayment. Some of these cases related to extension agreements, but neither the original contracts nor the extension agreements therein contain a forfeiture provision in case of nonpayment.

The rule of these cases, however, would not apply to this case if the forfeiture provisions of the original contract of October 22, 1931, are sufficiently referred to and retained in the supplemental contracts of February 23, 1933, and January 5, 1934.

In order to determine whether or not the forfeiture provisions of the original contract were retained and made a part of the supplemental contracts by reference, an examination thereof is necessary. We have hereinabove set out so much of the original and supplemental contracts as may be necessary to determine this question. The original contract provides that it is

"expressly agreed by and between the parties * * * *that the time and times of payment of said sums of money, interest and taxes * * * is the essence * * * of the contract, and that if*

*any default is* made in any of the payments or agreements * * * mentioned * * *, this agreement shall be void, * * * and the party of the second part shall have no claim in law or equity against the party of the first part, nor to the above mentioned real estate nor any part thereof, *and any claim or interest, or right the party of the second part may have had hereunder up to that time by reason thereof, or of any other payments * * * shall, on * * * such default, cease, * * * and become forfeited."* (Italics ours.)

None of the terms with reference to a forfeiture was in any manner changed or extinguished by the first or second supplemental agreements referred to. On the contrary, both expressly retain all such provisions of the original contract. The first supplement provides:

"Nothing contained herein shall effect or change the rights of the parties to said original contract except as modified or changed herein."

No change was made therein, except that the time of payment as provided in the original contract was extended two years.

The second supplemental agreement was executed January 5, 1934. This agreement was not a substitute for the original, but was "a supplemental agreement and made in connection with *and made a part of the above mentioned agreements."* This supplemental agreement provided that:

"The second parties pay to the party of the first part the sum of $300 on June 1, 1934, and that said payment * * * is to be applied on the principal of the $1,000 payment due June 1, 1933, as provided in the said real estate contract, dated October 22, 1931."

The second supplemental agreement also provided that:

"It is agreed between the parties hereto that this supplemental agreement will not alter or vary the terms of said real estate contract entered into October 22, 1931, nor the supplemental contract entered into on February 23, 1933, except the payment of said $300 mentioned herein."

This agreement did not in any manner waive or eliminate the payment of any part of the first $1,000 required by the

original contract; it merely changed the time of paying part of it. The whole amount, including the $300, was still due and payable. As the original contract provided that *"time of payment is made the essence of the contract, * * * and if any default is made in any of the payments, * * * any claim or interest of the second party * * * shall,* on such default, cease * * * and *become forfeited,* etc.,"* although the time of paying $300 of the first $1,000 was changed, the payment of the entire amount, including the $300, still remained subject to the terms of the original contract, and the payment of this part of the $1,000 is still subject to the terms of that contract providing for a forfeiture *"on default* of any of the payments" required from the second party.

It is our conclusion from a reading of the original contract and the two supplemental contracts that the terms of forfeiture contained in the original contract of October 22, 1931, were fully preserved and retained in and by the supplemental agreements referred to, and that a failure to pay the $300 would work a forfeiture of the contract if not paid within 30 days after giving the statutory 30 days' notice.

■❚■ II. Appellees, however, claim there was no forfeiture because they left a check of $300 with the Dunlap Savings Bank on July 9, 1934, payable to appellant.

The statute authorizing forfeitures provides as follows:

"Such forfeiture and cancellation shall be initiated by the vendor * * *, by serving or causing to be served on the vendee * * *, a written notice which shall:

"1. Reasonably identify said contract, and accurately describe the real estate covered thereby.

"2. Specify the terms and conditions of said contract which have not been complied with.

"3. Notify said party that said contract will stand forfeited and canceled unless said party within thirty days after the completed service of said notice performs the terms and conditions in default, and, in addition, pays the reasonable costs of serving the notice." Code 1931, section 12390.

Code, section 12392, provides that:

"The right to forfeit for breach occurring before said notice was served shall terminate if, prior to the expiration of the

day for performance as specified in the notice, the party in default *performs the terms and conditions as to which he is in default, and pays to the party not in default the reasonable cost of serving said notice.*"

The evidence shows without dispute that a payment of $300 was due June 1, 1934, and that this amount was not paid when due. It is also shown without dispute that this amount never was paid directly to appellant. The evidence also shows that appellees never paid the reasonable cost of serving the notice of forfeiture.

On June 9, 1934, after said amount became due, appellant duly served upon the appellees a statutory notice of forfeiture, as provided by section 12390 of the Code.

On the afternoon of the last day on which appellees were required to pay the amount due, they left a check of $300, payable to appellant, at the Dunlap Savings Bank for appellant, with an indorsement that it be credited on a certain $1,000 note.

Appellee Roberts claims that in a conversation he had with appellant before the money became due, appellant told him to leave the money at the Dunlap Savings Bank. There is a sharp conflict in the evidence about this part of the conversation, as Mr. Schwab, the appellant, expressly denies ever telling Mr. Roberts that he could leave the money at the Dunlap Savings Bank for him, or that it would be all right if it was not paid on time. The appellant says he never authorized the appellees or either of them to leave this money or any other money at the Dunlap Savings Bank for him. Appellees' testimony stands alone and uncorroborated upon this point. The appellant's testimony is somewhat corroborated by the undisputed fact that he never authorized the cashier of the bank to receive this money for him. The evidence also shows without dispute that appellant never· authorized the Dunlap Savings Bank to take a conditional check in payment of the amount due from appellees.

Under the facts, including the service of the notice of forfeiture, and all other acts of the parties, we are constrained to hold that appellant never authorized appellee Roberts to make this payment to the bank. The conversation in which the authority was alleged to have been given, however, was had some time before June 1, 1934, when the $300 payment became due.

The forfeiture notice required the appellees to pay the

amount due upon the contract to appellant within 30 days. This notice did not authorize them to pay the money into the bank. The notice of forfeiture necessarily withdrew any authority appellee Roberts might have had to pay the money into the bank before it was due, and before the notice of forfeiture was served upon appellees.

The fact that appellant, prior to giving the notice, and prior to the time the money became due, told appellee that he could pay it into the bank, and that a few days would make no difference, did not amount to a waiver of appellant's right to insist upon the strict performance of the contract after default of payment when due. Janes v. Towne, 201 Iowa 690, 207 N. W. 790.

It is our conclusion that after the notice of forfeiture was served, it was appellees' duty to pay the money to appellant direct.

█▐█ If, however, it could be conceded that appellees were authorized to pay the amount due into the Dunlap Savings Bank, it became their duty to pay that amount into the bank unconditionally. The trouble with appellees' position is that the money was never paid into the bank to the appellant's credit; it was first paid into the bank to the credit of appellee Roberts on July 6, 1934, and on July 9, 1934, the last day of the 30-day notice, Roberts drew a check against his funds in the bank payable to appellant, *on condition*, however, that the amount paid be credited upon a $1,000 note due June 1, 1934. The following is a copy of the check delivered to the cashier of the Dunlap Savings Bank:

"Dunlap, Iowa, July 9, 1934.
"Pay to the order of C. Schwab $300. Three Hundred and No/100 Dollars. For Cred. on $1,000. note due 6/1/34.
"(Signed) C. E. Roberts."

The undisputed evidence shows there was no such note in existence. It also shows that appellant knew nothing about the delivery of such a check to the bank until a few days after the expiration of the 30-day notice of forfeiture. The only knowledge appellant had about any transaction between appellees and the bank was received after banking hours on the 9th day of July, 1934, when his daughter told him that some one had telephoned that "the money was left at the bank for him." He knew

nothing of the conditions of the check until he called at the bank two or three days later. There is not a word of testimony tending to show that appellant ever authorized appellees to deliver this or any other check to the Dunlap Savings Bank, as his agent. The check shows that it was not to be delivered until and after appellees received a credit upon a certain $1,000 note which was not in existence. The cashier of the Dunlap Savings Bank testified that he would not have cashed this check unless and until a note of $1,000 was produced and a credit of $300 was indorsed thereon.

It is our finding from the evidence in this case that the Dunlap Savings Bank was not the agent of appellant and was never authorized to receive a check for or on behalf of appellant. It is also our finding that the Dunlap Savings Bank was the agent of appellees for the purpose of securing credit for the amount of the check upon a certain $1,000 note *which never had any existence.*

It is the well-settled rule of law that a check left at a bank for a creditor, to be delivered upon the production of a nonexistent note for indorsement of credit thereon, does. not constitute a payment. 48 Corpus Juris, 589, 591, 617; Fremont County v. Fremont County Bank, 145 Iowa 8, 123 N. W. 782, Ann. Cas. 1912A, 1220.

"Broadly speaking, payment of a debt may be made only to the creditor, or to his assignee, or to someone else to whom he directs, or consents or has theretofore agreed, that it be paid, or whom he expressly or by implication authorizes to receive it, or who holds a lien or right paramount to that of the creditor; and payment to any other person is not effectual to extinguish the debt or discharge the debtor, unless otherwise provided by statute." 48 Corpus Juris, 589.

"Where the debtor has authority to make payment by depositing the money, he is ordinarily bound to give notice of the deposit to the creditor, and a mere deposit cannot effectuate payment where the creditor has no knowledge or notice of it." 48 Corpus Juris, 591.

"The delivery to, or acceptance by, the creditor of his debtor's check, although for convenience often treated as the passage of money, is not payment, even though the check is certified be-

fore delivery, in the absence of any agreement or consent to receive it as payment.'' 48 Corpus Juris, 617.

In Fremont County v. Fremont County Bank, 145 Iowa 8, loc. cit. 13, 123 N. W. 782, 784, Ann. Cas. 1912A, 1220, this court said:

''The authorities seem to agree that to constitute payment the money or other thing must pass from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose.''

It is the well-settled rule of law in this state that the delivery of a check directly to a creditor does not constitute payment, unless in due course of time the check is actually cashed. Harbach v. Colvin, 73 Iowa 638, 35 N. W. 663; Dille v. White, 132 Iowa 327, 109 N. W. 909, 10 L. R. A. (N. S.) 510; Bellevue Bank v. Security Nat. Bank, 168 Iowa 707, 150 N. W. 1076; Sanitary Can Co. v. National Pickle & Canning Co., 191 Iowa 1259, 184 N. W. 354, 18 A. L. R. 532.

If, therefore, a check is delivered to a bank under such conditions that the creditor cannot receive the cash thereon, unconditionally, the same rule must apply.

After a full consideration of all the facts disclosed by the record in this case, we are forced to the conclusion that the amount due and required to be paid under the second supplemental agreement was not made within the 30 days after the notice of forfeiture was served upon appellees.

 III. Appellees also claim that the delivery to the bank of the $300 check hereinabove referred to operated as a tender, and that as no objections were made thereto they are waived.

In the first place, in order to constitute a tender, it would be necessary that the same be made to appellant himself or his duly authorized agent. It is our conclusion, as shown by the discussion in the previous division of this opinion, that the Dunlap Savings Bank was not the agent of appellant, and it was, therefore, unauthorized to receive any check or payment from appellees.

It is obvious from the nature of the transaction that the bank could not have been acting as agent for appellant. The money deposited by appellee C. E. Roberts was placed to his own credit, and although the check was made payable to ap-

pellant, it was payable only on condition that a credit therefor be indorsed upon a certain $1,000 nonexistent note. If appellees considered the bank as the agent for appellant, the money should have been placed in the hands of the bank unconditionally. The check, however, was not made payable to the bank, but to the appellant, with instructions not to pay the amount thereof unless credit was indorsed upon a certain note. This money, therefore, at all times remained in the name of appellee C. E. Roberts. If a tender was made, which is not hereby conceded, it would be necessary to show that it was made unconditionally.

It is the well-settled rule in this and other states that a tender is not good unless made unconditionally. Brandt v. Chicago, R. I. & P. R. Co., 26 Iowa 114; West v. Farmers Mut. Ins. Co., 117 Iowa 147, 90 N. W. 523; Simons v. Petersberger, 171 Iowa, 564, 151 N. W. 392; Steckel v. Selix, 198 Iowa 339, 197 N. W. 918; United States v. World's Columbian Exposition (C. C.) 56 F. 630; Noyes v. Wyckoff, 114 N. Y. 204, 21 N. E. 158; Tompkins v. Batie, 11 Neb. 147, 7 N. W. 747, 38 Am. Rep. 361.

As disclosed by the discussion in the previous division of this opinion, it appears without dispute that the check in question was not tendered to appellant unconditionally.

Other objections have been raised by appellant because of appellees' failure to pay interest on the $300 after the time it became due on June 1, 1934, and also because of appellees' failure to pay the reasonable cost of the service of the notice of forfeiture. In view of our conclusion that payment of the amount due was not made within 30 days after the service of the notice of forfeiture, a consideration of these questions is deemed unnecessary.

For the reasons hereinabove expressed, it is our conclusion that plaintiff was entitled to a decree quieting his title to the land in question. The decree of the lower court is, therefore, hereby reversed and the case remanded, with instructions to enter a decree in harmony herewith.

Reversed and remanded, with instructions.

ALBERT, DONEGAN, ANDERSON, PARSONS, and HAMILTON, JJ., concur.

POWERS, J., took no part.