[No. 52097–6.   En Banc.   July 24, 1986.]

ROBERT D. SMITH, ET AL, *Plaintiffs,* v. LARRY
D. KING, ET AL, *Respondents,* AL SMITH,
*Appellant.*

*Rodney G. Pierce, Janis K. Stanich,* and *Riley, Skellenger, Ginsberg & Bender,* for appellant.

*Stephen K. Kortemeier,* for respondents.

ANDERSEN, J.—

### FACTS OF CASE

This is an action seeking damages for breach of a real estate contract brought by one set of contract purchasers against a later set of contract purchasers after all of their interests had been forfeited out by the owner of the property. The trial court awarded damages to the first contract purchasers on their cross claim against the second contract purchasers who then appealed to the Court of Appeals. The appeal was subsequently transferred to this court.[1]

On September 30, 1978, Robert Smith and his wife (owners) sold an apartment house to Larry King, William Mullinax and their wives (first purchasers) by real estate contract (Contract I). The purchase price was zero down, with monthly interest installments of $452 and a balloon payment of $57,000 due on September 30, 1981. During the next 20 months, the first purchasers rented out the apartment units and used the resulting income to pay the

---

[1]The Supreme Court, acting pursuant to RAP 4.3, in order to promote the orderly and expeditious administration of justice, requested the Court of Appeals to transfer this and a number of other cases to the Supreme Court for review.

required monthly interest installments.

On June 6, 1980, the first purchasers resold the property to Al Smith and John Frankenfield (second purchasers) by a second real estate contract (Contract II). As part of the purchase price, the second purchasers expressly assumed and agreed to pay all amounts still due to owners on the first contract ($57,000 plus interest installments). In addition, the second purchasers agreed to pay the following to the first purchasers: $9,000 down, monthly interest installments of $200 and a balloon payment of $24,000 due on June 20, 1986. Thus, the purchase price on Contract II totaled $90,000 plus interest.

The second purchasers proceeded to move the tenants out and began renovation of the apartment house. Two months later, however, they abandoned the property altogether, leaving all of the units uninhabitable and in need of extensive repair; subsequent vandalism resulted in further damage. As of the time of trial, it would have cost approximately $15,000 to make the premises habitable and income producing again.

Following their abandonment of the property in August 1980, the second purchasers made no payments either to the owners or to the first purchasers as required by Contract II. Nor did the first purchasers make any payments to the owners as required by Contract I. The owners thereupon brought an action to forfeit out the interests of all the purchasers in the property. In this action, the first purchasers cross–claimed against the second purchasers, asking that "if the contract is forfeited, they be awarded judgment against [second purchasers] for their damages, costs and reasonable attorney fees." The second purchasers entered general denials to the cross claim.

On June 26, 1981, the trial court entered judgment for the owners. Pursuant to provisions of Contract I, the interests of all purchasers in the property were forfeited out; the owners were permitted to retain all previous payments made to them as liquidated damages; and the owners were awarded judgment against first purchasers for $1,739.60 as

attorneys' fees and costs.

Then on August 6, 1981, the trial court entered judgment for the first purchasers against the second purchasers on the first purchasers' cross claim. The trial court awarded the first purchasers a total of $27,339.60 in damages, which consisted of the following: $24,000, the equivalent of the unpaid principal due to them under Contract II; $1,600 in unpaid interest installments; and $1,739.60 as reimbursement for the attorneys' fees and costs which first purchasers were required to pay the owners by the June 26, 1981 judgment. The trial court also awarded the first purchasers an additional $1,000 as attorneys' fees.

Second purchaser Al Smith appealed,[2] following which the case was transferred to this court for review of the judgment entered on the cross claim.

We are presented with one ultimate issue.

### ISSUE

Here contract purchasers of real estate resold the property to second purchasers by another real estate contract; the second purchasers then later breached their contract with the first purchasers causing the first purchasers' interest in the property to be forfeited back to the original owner. Under such circumstances, can the first purchasers recover as damages from the second purchasers an amount equal to the unpaid portion of the purchase price that was payable to them (the first purchasers) under the contract?

### DECISION

■ CONCLUSION. Unless the real estate contract between the first purchasers and the second purchasers (Contract II) provides otherwise, the first purchasers may sue the second purchasers for actual damages resulting from the latter's

---

[2]Judgment was entered in the trial court against both of the second purchasers, Al Smith and John Edward, a/k/a John Frankenfield, both of whom were represented by counsel. On appeal, only Al Smith has appeared through counsel, filed an appellate brief and presented oral argument through counsel. The trial court specifically did not adjudicate any issues between the second purchasers, nor do we.

breach of contract. The first purchasers are entitled to be placed in as good a pecuniary position as they would have been in had the second purchasers not breached the contract. Thus, where the second purchasers' breach caused the first purchasers' interest in the subject property to be forfeited, the first purchasers are entitled to damages equal to the unpaid portion of the purchase price payable to the first purchasers under the contract.

This appeal involves a number of objections raised concerning the first purchasers' cross claim for damages against the second purchasers who defaulted. The second purchasers' five principal objections are these: (1) the first purchasers' cross claim actually seeks specific performance rather than damages and, since the first purchasers were never in a position to tender a deed to the second purchasers, they should be precluded from resort to this remedy; (2) damages were improperly computed; (3) the real estate contract (Contract II), by its terms, should be held to preclude the first purchasers from recovering actual damages against the second purchasers; (4) the real estate contract (Contract II) lacks an acceleration clause and, therefore, the first purchasers should not be able to obtain an award of the unpaid contract price prior to its due date; and (5) the first purchasers failed to mitigate damages and, therefore, should not be entitled to any recovery herein. We disagree with these contentions for the following reasons.

1. The first purchasers are not here asking for specific performance of Contract II. They are instead seeking to be put in as good a pecuniary position as they would have been in had the second purchasers fulfilled their obligations under that contract. Under the facts, no possibility of first purchasers obtaining a double recovery exists. Expressed otherwise, the first purchasers are seeking no more than to recover the benefit of their bargain on Contract II. In a number of cases we have identified the seeking of this type of remedy as a claim for damages.[3]

---

[3]*Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 39, 686 P.2d 465 (1984); *Died-*

2. The first purchasers' expected "net gain" or "benefit of bargain"[4] under Contract II was properly calculated. By contract, they purchased the property at issue from the owners for $57,000, excluding interest. They later resold the property to the second purchasers for $90,000. Their expected total gain was thus $33,000. Of this amount, $9,000 was collected from the second purchasers as a down payment on the contract (Contract II). However, $24,000 remained to be paid. In addition, second purchasers still owed the first purchasers $1,600 in unpaid interest installments. To deny the first purchasers recovery of this expected net gain of $25,600 as damages would deny them the benefit of their bargain.

The second purchasers contend that this is not the correct method of computing damages. They argue that the first purchasers' damages should have been determined by taking the difference between the contract price still owing to the first purchasers and the market price of the property at the time of the breach.[5] This method of computing damages, however, necessarily presupposes that the first purchasers were free to dispose of the property following the second purchasers' breach, so that they would be able to realize its market value.[6] Such was not the case here. Rather, the second purchasers' breach of contract caused the first purchasers' entire interest in the property to be forfeited back to the original owners. As a result, the "value" of the property to the first purchasers was reduced

---

rick v. School Dist. 81, 87 Wn.2d 598, 610, 555 P.2d 825 (1976); Prier v. Refrigeration Eng'g Co., 74 Wn.2d 25, 30, 442 P.2d 621 (1968); Platts v. Arney, 50 Wn.2d 42, 46, 309 P.2d 372 (1957).

[4]See Platts, at 44, 46.

[5]See Mathews v. Heiser, 42 Wn.2d 326, 337–38, 255 P.2d 366 (1953); Reiter v. Bo·" ·, 180 Wash. 230, 236, 39 P.2d 370, 97 A.L.R. 1489 (1934).

·y v. Henry's Franchise Leasing Corp. of Am., 64 Cal. 2d 801, 805, 415 ·2 Cal. Rptr. 18 (1966); Yackey v. Pacifica Dev. Co., 99 Cal. App. 3d ·Cal. Rptr. 430 (1979).

to zero; its market value became immaterial. Under these circumstances, therefore, the first purchasers may recover as damages an amount equal to that portion of the purchase price, including the unpaid interest installments, still owing to them under the contract.[7]

3. The second purchasers next claim that Contract II, by its terms, prevents the first purchasers from recovering actual damages from them. This contention is not well taken. Contract II provides that if payment is not made in the time and manner required,

> the seller *may elect* to declare all the purchaser's rights hereunder terminated, and upon his doing so, all payments made by the purchaser hereunder and all improvements placed upon the real estate shall be forfeited to the seller as liquidated damages, . . .

(Italics ours.) We have held that this type of clause merely gives the seller the option of seeking liquidated damages upon the purchaser's default. The seller is not limited to this remedy; however, the seller may instead sue for specific performance in the proper case or, as was done here, for actual damages.[8]

4. Nor does the absence of an acceleration clause in Contract II affect the first purchasers' right of recovery. It is argued that because the $24,000 balloon payment is not presently due under the terms of the contract, the first purchasers may not "accelerate" payment of this amount where the contract does not have a clause providing for acceleration upon default. This argument, however, does not correctly perceive the nature of the first purchasers'

---

[7]*See First Nat'l Bank v. Mapson*, 181 Wash. 196, 206, 42 P.2d 782 (1935), *overruled on other grounds in First Nat'l Bank v. Tiffany*, 40 Wn.2d 193, 242 P.2d 169 (1952); *Kirk v. Welch*, 212 Minn. 300, 3 N.W.2d 426 (1942); *Rogers v. Tresidder*, 178 Misc. 590, 35 N.Y.S.2d 382 (1942).

[8]*Reiter*, at 231, 235. *Cf. Mahoney v. Tingley*, 85 Wn.2d 95, 98, 529 P.2d 1068 (1975) (where a clause in the parties' earnest money agreement provided that upon the purchaser's default the earnest money *shall* be forfeited as liquidated damages unless the seller elects to enforce the agreement, the seller may *not* sue for actual damages).

claim. They are not suing to specifically enforce Contract II, but to recover damages.

An analogous situation was presented to the Minnesota Supreme Court in *Kirk v. Welch*, 212 Minn. 300, 3 N.W.2d 426 (1942). In that case, the purchase price on a real estate contract was to be paid partly by down payment, partly by monthly installment payments, and partly by the purchaser's agreement to assume an existing mortgage on the property. The purchaser defaulted on her obligation to pay the mortgage debt; as a result, the mortgage was foreclosed and the mortgagee obtained title to the property. The seller on the real estate contract, having lost her interest in the property because of the purchaser's breach of contract, sued the purchaser for damages equal to the unpaid balance on the contract. The purchaser argued that since this balance consisted of future installments that were not yet due by the terms of the contract, and since there was no acceleration clause in the contract, the seller was not entitled to accelerate payment of this amount. The court rejected the argument, observing that

> [t]he rule . . . that, absent an acceleration clause, future installments do not become due and payable upon default of payment of one installment, does not help defendant. This action is to recover not the future installments, but damages for breach of contract.[9]

(Citations omitted.) Similarly, the first purchasers here are not seeking to accelerate the $24,000 balloon payment, but rather are seeking to recover damages caused by the second purchasers' breach. The lack of an acceleration clause is, thus, immaterial.

█ 5. Finally, it is argued that the first purchasers failed to mitigate their damages and should on that account be precluded from recovery. One who is injured by another's breach of contract must, of course, use reasonable means to

---

[9] *Kirk,* at 305.

avoid or minimize the damages.[10] However, it is the breaching party who has the burden of showing that reasonable alternative courses of action were, in fact, open to the non-breaching party.[11]

■ Here, the first purchasers' damages were triggered by the second purchasers' failure to make installment payments to the owners as required by Contract II and the resulting forfeiture of all purchasers' interests in the property to the owners. To avoid this forfeiture, the first purchasers would have had to make the payments to the owners themselves and themselves repair the apartment house. At trial, one of the first purchasers testified that because of his financial difficulties, this would be impossible. The trial court found as a fact that in essence Mr. King (the first purchaser who testified) did not have the resources to permit him to resume the payments on Contract I or to make the apartment house habitable again, but it made no such finding as to the other first purchasers. Since the second purchasers had the burden of proof on the failure to mitigate damages issue, we presume from the absence of further findings in that regard that the second purchasers failed to sustain their burden of proof on this issue.[12] Furthermore, our review of the record bears out that the second purchasers presented no evidence in that regard.

■ The second purchasers have also assigned error to the trial court's award of attorneys' fees. The basis of this assignment of error is neither stated nor argued, nor is any legal authority bearing on that issue cited. Accordingly, we

---

[10]*Young v. Whidbey Island Bd. of Realtors*, 96 Wn.2d 729, 732, 638 P.2d 1235 (1982).

[11]*Young*, at 734.

[12]*Golberg v. Sanglier*, 96 Wn.2d 874, 880, 639 P.2d 1347, 647 P.2d 489 (1982); *Pilling v. Eastern & Pac. Enters. Trust*, 41 Wn. App. 158, 165, 702 P.2d 1232 (1985).

consider this assignment of error waived.[13]

Second purchasers' remaining assignments of error are answered by the foregoing or are deemed nonmeritorious.

We hold that the trial court did not err by awarding damages to the first purchasers on their cross claim against the second purchasers, or in determining the amount there–of.

Affirmed.

DOLLIVER, C.J., PEARSON, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—Until now, the law of this state has always been that the vendor of land by a real estate contract, upon default of the purchaser, may either sue for the contract price by tendering the deed, or sue for damages and keep the land. *Tombari v. Griepp,* 55 Wn.2d 771, 776, 350 P.2d 452 (1960); *Hogan v. Kyle,* 7 Wash. 595, 35 P. 399 (1894). Furthermore, a vendor cannot both retain the property and sue for the purchase price, as this would give the vendor a double recovery. *Stevens v. Irwin,* 132 Wash. 289, 291, 231 P. 783 (1925). I believe the majority implicitly modifies this rule, allowing for a double recovery, and I therefore dissent.

Robert and Barbara Smith sold the property in question to the Kings and Mullinaxes. They in turn sold the property to John Frankenfield and his partner (hereinafter Frankenfield). Both of these sales were executed pursuant to real estate contracts, which provided that if the purchasers failed to make payments, their interest in the property could be forfeited.

Frankenfield failed to make payments on the second real estate contract. The Kings and Mullinaxes, who used the money from this second contract to pay off the first contract, therefore had a choice. They could have continued to make the payments to the original owners under the first

---

[13]*Puget Sound Plywood, Inc. v. Mester,* 86 Wn.2d 135, 142, 542 P.2d 756 (1975).

contract and sued Frankenfield. This suit could have been for damages or for forfeiture of Frankenfield's interest in the property. Alternatively, they instead decided to default on their first real estate contract with the original owners, thereby forfeiting their interest in the property. As a result of this forfeiture proceeding, Frankenfield's interest was also forfeited.

I believe that the decision of the Kings and Mullinaxes can only be described as an election to forfeit the interest of Frankenfield and therefore precludes any additional recovery against him. Frankenfield lost his interest in the property, and lost all the money he had spent acquiring that interest. Accordingly, he is unfairly penalized twice if, in addition to forfeiting this investment, he is liable to the Kings and Mullinaxes for the damages from the breach of the second contract. The forfeiture of the land represented the damages for that breach.

Furthermore, the Kings and Mullinaxes would receive a double recovery in this situation. Not only would they receive damages for breach of the second real estate contract, but also, they would have permitted a forfeiture of Frankenfield's interest in the property. While it is true that the Kings and Mullinaxes did not receive the property by that forfeiture because their interest was also lost, this was not Frankenfield's fault. The Kings and Mullinaxes lost this interest on account of their own breached real estate contract. By failing to make payments on the first contract, the Kings and Mullinaxes were also at fault. In essence, two breaches occurred, one by Frankenfield and one by the Kings and Mullinaxes. I see no reason at all why Frankenfield should suffer twice, and the Kings and Mullinaxes not at all.

I believe the majority found itself in this baffling position by the way it framed the issue in this case. The majority states that:

> Here contract purchasers of real estate resold the property to second purchasers by another real estate contract; the second purchasers then later breached their

contract with the first purchasers *causing the first pur-
chasers' interest in the property to be forfeited back* to
the original owner.

(Italics mine.) Majority, at 446. This is incorrect. Franken-
field's breach did not cause the Kings and Mullinaxes'
interest to be forfeited back to the Smiths. The Kings and
Mullinaxes voluntarily chose not to continue paying on the
first real estate contract. They had just 2 months earlier
received $9,000 as a down payment on the second real
estate contract—an amount more than sufficient to make
all the payments on the first contract until the balloon
payment became due well over a year later. That the Kings
and Mullinaxes chose not to make the payments, out of the
$9,000 payment made by Frankenfield to the Kings and
Mullinaxes, cannot be attributed to Frankenfield. Other-
wise instead of having a simplified real estate forfeiture
procedure requiring the seller to elect his remedy, a great
deal of manipulation for the balance of the debt will occur
with great injustices resulting to subsequent contract ven-
dees.

I believe, therefore, the result the majority countenances
is a marked departure from well settled law in this state.
The breach of a real estate contract allows the vendor
either to sue for damages or to forfeit the purchaser's
interest in the property. The vendor, however, cannot get
both remedies. Here, the Kings and Mullinaxes, by allowing
forfeiture proceedings to occur, elected that remedy, and
should be barred from recovering additional damages. I
dissent, as I would reverse the trial court's judgment for
additional damages against Frankenfield and his partner.

UTTER and GOODLOE, JJ., concur with DORE, J.

Reconsideration denied October 10, 1986.