**Jerry W. McBRIDE, Appellee,**

v.

**Lance LeRoy HAMMERS and Rita Mae Hammers, Appellants.**

**No. 86–1086.**

Supreme Court of Iowa.

Jan. 20, 1988.

Kasey W. Kincaid and Thomas W. Foley of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for appellants.

Mark J. Eveloff, Council Bluffs, for appellee.

Considered by LARSON, P.J., and SCHULTZ, CARTER, LAVORATO, and NEUMAN, JJ.

LAVORATO, Justice.

Jerry W. McBride brought this equity action against Lance LeRoy and Rita Mae Hammers (Hammers) to recover damages equivalent to the balance of the purchase price owed him under an agreement for the sale of the assets of a going business that included real estate. The district court awarded McBride damages. Hammers appealed, and we transferred the case to the court of appeals, which reversed. On further review in this court, we now vacate the court of appeals decision and affirm the judgment of the district court.

In 1981 McBride entered into an agreement with James J. Schoening and Barbara M. Schoening (Schoening) under which he purchased for $185,000 the assets of a going business known as "The Late Show," formerly called the "Playmaker Lounge." These assets included the business's inventory, furniture, fixtures, equipment, names, and the real estate upon which the business was located. At the time of this agreement, Schoening was purchasing the real estate on a land sale contract from Roger L. Stacy and Janene C. Stacy (Stacy).

According to the agreement, McBride paid $25,000 in cash and assumed obligations totaling $160,000. These obligations included the balance owed by Schoening to Stacy on the real estate contract. In addition to other boiler plate provisions, the agreement contained a forfeiture and foreclosure clause commonly used in a land sale contract.

By 1984 McBride was facing forfeiture by Schoening because of his inability to meet the obligations he assumed under the agreement. To avoid a forfeiture, McBride agreed to sell the business and its assets to Hammers for approximately $188,200. The written agreement between McBride and Hammers covering this sale specified that Hammers was to pay McBride a lump sum of $45,300 and assume all of the obligations under the McBride-Schoenings agreement, which by now totaled approximately $142,900.

The McBride–Hammers agreement also contained the normal boiler plate provisions, as well as a forfeiture and foreclosure clause. An addendum to the agreement designated Hammers as McBride's agent for service by Schoening of any forfeiture notice under the 1981 agreement. No notice of forfeiture had to be given to McBride under this provision.

Like the 1981 agreement, the 1984 agreement contained an assignment clause, which provided, in part, that the assignor's liability to perform does not terminate unless a specific release is granted by the seller under the agreement. No release was granted to McBride by Schoening when McBride made his agreement with Hammers.

Hammers immediately experienced financial problems in running the business. As a result, Hammers did not pay McBride the lump sum or meet the obligations assumed under the 1984 agreement. At this point Schoening regained possession of the real estate via a forfeiture of the 1981 agreement. McBride then sued Hammers, first for specific performance and then, under an amended petition, for damages equivalent to the lump sum of the 1984 agreement.

The district court found for McBride, awarding him $45,300 set off by $1301.51 for debts of McBride's that were paid by Hammers. The court of appeals reversed in a two-to-one decision, reasoning that the forfeiture had terminated McBride's right

to the lump sum. The dissenter, however, felt that the McBride-Hammers agreement was completely separate from the earlier agreement and was, therefore, unaffected by the forfeiture under the earlier agreement.

McBride argues the court of appeals was wrong in determining that his right to the lump sum damages was terminated by the forfeiture under the 1981 agreement. He contends that because the 1981 and 1984 agreements are separate contracts, his rights under the latter contract remain unaffected by a forfeiture of the first contract.

Hammers, on the other hand, argues that the court of appeals was correct in characterizing the 1984 agreement as merely ancillary to the 1981 agreement. In Hammers' view the forfeiture ended Hammers' obligation to McBride as well as to Schoening.

We decide this dispute by reviewing the facts de novo under Iowa Rule of Appellate Procedure 4. We give weight to the fact-findings of the district court but are not bound by them. Iowa R.App. 14(f)(7).

## I. *Relationship Between the Two Transactions.*

■ This court recognized long ago that "the *right* to *become* the owner of ... land is as subject to sale as the land itself...." *Durband v. Ney,* 196 Iowa 574,. 579, 191 N.W. 385, 388 (1923) (emphasis added). This view has been accepted in other jurisdictions as well. *See* 77 Am.Jur.2d *Vendor and Purchaser* § 387 & nn. 27 & 28, at 533 (1975) ("It is generally recognized that a purchaser of real estate, ... prior to full performance on his part, has by virtue of his contract an interest which he may assign or transfer, or contract to transfer....").

In his agreement with Hammers, McBride did what these authorities allow: he sold to Hammers his right to become owner of the property. In doing so, we think McBride formed a contract with Hammers separate and distinct from the 1981 agreement. We come to this conclusion for several reasons.

First, McBride had a substantial equity in the property approximately equal to the lump sum amount of $45,300. He would most assuredly want to protect this equity from loss in the event Hammers defaulted. We note that Hammers paid nothing down and that Hammers was required to pay McBride the $45,300 approximately three months from the date of their agreement. Under the court of appeals' reasoning—that one rather than two contracts existed—Hammers had little to lose by defaulting on the obligation to Schoening because Schoening would probably forfeit and eliminate the lump sum obligation. *See Gray v. Bowers,* 332 N.W.2d 323, 325 (Iowa 1983) (forfeiture extinguishes purchaser's liability for balance of unpaid purchase price); *Abodeely v. Cavras,* 221 N.W.2d 494, 497–98 (Iowa 1974); *First Nat'l Bank v. LeBarron,* 201 Iowa 853, 856, 208 N.W. 364, 366 (1926).

We think it is reasonable to conclude that McBride, to guard against loss of his equity, insisted on, and Hammers assented to, an agreement separate and distinct from the 1981 contract. Under such a separate agreement McBride could, as he has here, sue for damages to protect his equity without being affected by Schoening's forfeiture. *See Risken v. Clayman,* 398 N.W.2d 833, 838 (Iowa 1987).

■ Our conclusion is buttressed by the insertion of a forfeiture clause into the second agreement. Forfeiture is not an available remedy under land contracts unless the contract specifically provides for it. *Schwab v. Roberts,* 220 Iowa 958, 963, 263 N.W. 19, 21 (1935); Iowa Code § 656.1. Here, it is reasonable to conclude the parties specifically provided for forfeiture as an additional safeguard of McBride's equity against default by Hammers.

Second, the form of agreement McBride and Hammers chose to accomplish the sale supports a finding here of two separate contracts. Had the parties intended one contract, or had they intended their agreement to be completely subordinate to the 1981 contract, they could have used a simple assignment form. *See* 1 F. Messer &

M. Volz, *Iowa Practice* § 380, at 232 (1954). Instead, they used a detailed agreement that provided for rights and obligations distinct from and independent of those set out in the earlier contract.

Third, the addendum to the 1984 agreement, despite its specific reference to the 1981 contract, emphasizes the independence of the two. The addendum expresses McBride's disavowal of any further relationship with Schoening. Had McBride and Hammers intended otherwise, we assume they would not have agreed that Hammers should take McBride's place with respect to forfeiture by Schoening.

Considering the relevant authorities and the intention of the parties as expressed in their written agreement, we hold that two separate contracts exist here. *See Mopper v. Circle Key Life Ins. Co.,* 172 N.W.2d 118, 124 (Iowa 1969).

## II. *The Remedy.*

McBride contends the district court was correct in awarding him damages equivalent to the lump sum owed him under the McBride–Hammers contract. We agree.

■ A seller may elect one of four possible remedies when a purchaser defaults on obligations under a real estate contract:

(1) keep good its tender of performance, demand the balance of the purchase price, and sue for specific performance;

(2) terminate the contract because of the purchaser's breach, keep the land, and sue for damages for the breach;

(3) rescind the contract in toto; or

(4) force a forfeiture.

*Risken,* 398 N.W.2d at 838; *accord Abodeely,* 221 N.W.2d at 497–98; *LeBarron,* 201 Iowa at 856, 208 N.W. at 366. A seller may not elect to pursue inconsistent remedies by proceeding with an action based on affirmation of the contract, such as a suit for damages, and then use a theory based on disaffirmance of the contract, such as forfeiture. *Abodeely,* 221 N.W.2d at 498; *see also* 92 C.J.S. *Vendor and Purchaser* § 376, at 311 (1955).

The seller's choice of a particular remedy figured decisively in a case relied on by Hammers and the court of appeals majority, *Gray v. Bowers,* 332 N.W.2d 323 (Iowa 1983). There, we applied a principle somewhat different from the election of remedies doctrine. We held that the seller could not recover on a promissory note executed simultaneously with a real estate contract that was subsequently defaulted and forfeited. *Id.* at 324–25. We said that the contract between the parties had been terminated by the forfeiture, "thereby extinguishing any right to recover the unpaid purchase price," of which the promissory note was effectively a part.[1] *Id.* at 325.

The present case is very different from the situation in *Gray.* Here, McBride did nothing to extinguish his rights under the contract between Hammers and himself. Instead, he brought an action for damages equivalent to the lump sum, thereby affirming his contractual rights.

Nor did McBride attempt to pursue inconsistent remedies, which would be prohibited by the election of remedies doctrine. *See Gourley v. Nielson,* 318 N.W.2d 160, 161 (Iowa 1982). As such, there exists no barrier to McBride's choice of this particular remedy, damages.

In addition, unlike the promissory note in *Gray,* the lump sum here was not effectively part of the unpaid purchase price in the first contract. Thus, *Gray* is no authority for the proposition that the forfeiture here extinguished McBride's right to recover the lump sum.

> The *Gray* holding is based on "a substantive legal doctrine which is separate and distinct from the common law doctrine of election of remedies." *Id.* at 324–25. The operative fact under the former doctrine is not merely the plaintiff's election of a remedy that may be inconsistent with others, but his choice of a remedy that substantively terminates the contract and extinguishes all contractual rights. *Id.* at 325.

---

**1.** This rationale for precluding recovery can be distinguished from the election of remedies doctrine. The latter doctrine holds that a party may not pursue inconsistent remedies to redress the same wrong. *See, e.g., Gourley v. Nielson,* 318 N.W.2d 160, 161 (Iowa 1982); 28 C.J.S. *Election of Remedies* § 1, at 1057 (1941). This doctrine does not, however, preclude distinct and independent grounds of action arising from the same transaction. *Gray,* 332 N.W.2d at 324.

Because an award of damages may be a proper remedy under the circumstances, we must next decide what amount is actually warranted here, since Hammers unquestionably breached the contract.

In Iowa, the "ultimate purpose" behind the allowance of damages is to place the injured party in the position he or she would have occupied had the contract been performed. *Golden Sun Feeds, Inc. v. Clark*, 258 Iowa 678, 682, 140 N.W.2d 158, 161 (1966); *accord* R.A. Hillman, *Contract Remedies, Equity, and Restitution in Iowa* § 6.1, at 126 (1979).

■ In a case with facts nearly identical to those here, *Smith v. King*, 106 Wash.2d 443, 446–47, 722 P.2d 796, 799 (1986), the Washington Supreme Court relied on the same principle in allowing damages to a party in McBride's position. The court said that when the second purchasers' breach causes the first purchasers' interest to be forfeited back to the original owners, the first purchasers are entitled to damages equal to the unpaid portion of the purchase price owed under the second contract. *Id.* at 447, 722 P.2d at 799.

That court rejected the claim, also made by Hammers here, that damages should be the difference between the contract price of the property and its market value. Such a method of computing damages

necessarily presupposes that the first purchasers were free to dispose of the property following the second purchasers' breach, so that they would be able to realize its market value. Such was not the case here. Rather, the second purchasers' breach of contract caused the first purchasers' entire interest in the property to be forfeited back to the original owners. As a result, the "value" of the property to the first purchasers was reduced to zero; its market value became immaterial. Under these circumstances, therefore, the first purchasers may recover as damages an amount equal to that portion of the purchase price ... still owing to them under the contract.

*Id.* at 448–49, 722 P.2d at 800; *accord Kirk v. Welch*, 212 Minn. 300, 305, 3 N.W.2d 426, 429 (1942) (unpaid balance of purchase price allowed as damages to seller after property was lost through foreclosure by a third-party mortgagee because of purchaser's default on mortgage obligations purchaser assumed); *Robitshek v. Maetzold*, 198 Minn. 586, 588–89, 270 N.W. 579, 580 (1936).

We find this reasoning persuasive. Instead of seeking specific performance, McBride seeks to be put in as good a pecuniary position as he would have been had Hammers not defaulted under the second contract. *See King*, 106 Wash.2d at 447, 722 P.2d at 799. Simply put, McBride seeks to recover no more than the benefit of his bargain; in doing so he will not realize a double recovery. *See id.* His remedy is accurately described as a claim for damages. *See id.*

The district court properly calculated McBride's "benefit of the bargain" under the second contract. In 1981 McBride purchased the property for $185,000. By 1984, he owed approximately $142,900 on the purchase price. He sold the property at that time to Hammers for approximately $188,200 (lump sum of $45,300 plus indebtedness assumed of $142,900). Thus, McBride's expected gain was $45,300 (his equity in the property represented by the lump sum portion of the purchase price in the second contract), which the district court properly awarded him.

### III. *Disposition.*

Because we find that McBride's rights under his contract with Hammers were not affected by a forfeiture under an earlier, independent contract, we hold that the district court was correct in awarding McBride damages approximately equivalent to the lump sum owed him under the later contract. We therefore vacate the court of appeals decision and affirm the judgment of the district court.

DECISION OF THE COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.