IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of: | ) | No. 33868-1-III |
| | ) | (consolidated with |
| LANE DAVID LEHMAN, | ) | No. 34168-2-III) |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| CYNTHIA JOY LEHMAN, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Lane Lehman has two consolidated appeals. In his first

appeal, he argues the court commissioner erred when it entered orders setting

postsecondary support relating to his older child, and when it entered a modified child

support order relating to his younger child. We determine he failed to preserve the issues

he argues in his first appeal.

In his second appeal, he argues the trial court abused its discretion when it refused

to vacate the orders on appeal. We determine the trial court did not abuse its discretion

when it refused to vacate the orders under CR 60(b)(1). But because the trial court's

adopted findings are insufficient for us to review Mr. Lehman's alternative argument under CR 60(b)(11), we remand to the trial court for additional findings.

Because the trial court will need to apply its findings to an unclear area of law, we take this opportunity to explain under what circumstances a court may vacate an order or judgment under CR 60(b)(11) for an attorney's actions or inactions. We hold that a court may vacate a judgment or order under CR 60(b)(11) in those situations where an attorney's gross negligence effectively deprived a diligent but unknowing client of representation.

## FACTS

Lane Lehman and Cynthia Lehman were married on August 6, 1994. They have two children.

On May 8, 2014, the Lehmans entered an agreed decree of dissolution and an agreed order of child support relating to their two children, who at the time were 16 and 14 and resided with their mother. The decree changed Ms. Lehman's last name to Lincoln, so we will refer to her as Ms. Lincoln throughout the remainder of the opinion.

The child support calculation was supported by a worksheet. Mr. Lehman's net monthly income was set at $3,828, and Ms. Lincoln's net monthly income was set at $1,593. The Lehmans rounded the monthly transfer payments to $1,118 ($558.83 for

2

each child). The order provided that Mr. Lehman would pay support for each child until the child turned 18 or so long as the child remained enrolled in high school, whichever was latest. In addition, Ms. Lincoln reserved the right to request postsecondary support, provided she exercised her right before support for that child terminated.

One year after the original order, Ms. Lincoln filed a summons and petition for modification of child support. The petition misstated that Ms. Lincoln's child support worksheet was filed and served with the petition, but it was not. The petition also stated that Ms. Lincoln was not claiming a substantial change in circumstances, but instead was seeking postsecondary support based solely on the reservation of that issue in the original order of child support. Despite this, the modifications request went well beyond the reserved postsecondary support. Among other requests, Ms. Lincoln also requested modification of child support for her younger child.

On June 25, 2015, Mr. Lehman was served with the summons and the petition in Alabama where he resided. The summons directed Mr. Lehman to answer the petition within 60 days, and to file a financial declaration and a child support worksheet. On June 29, Mr. Lehman telephoned a law firm in Spokane and spoke with Mr. M.[1]

---

[1] We use the attorney's last name initial because he has not had the opportunity to respond to the statements set forth in this opinion, and we do not wish to disparage him.

On July 9, Mr. Lehman hired Mr. M.'s firm to represent him. On July 21, Mr. Lehman spoke with Mr. M.'s paralegal and asked what he needed to do to assist them. The paralegal directed Mr. Lehman to provide a copy of the documents with which he was served as well as three months of bank statements and recent pay stubs. Later that day, Mr. Lehman e-mailed the documents with which he had been served. On July 24, Mr. M. (not his firm) filed and served a notice of appearance on Mr. Lehman's behalf. Mr. M. did not provide a copy of his notice of appearance to Mr. Lehman.

On July 29, Mr. Lehman submitted the requested bank statements and pay stubs to Mr. M.'s office. On August 3, Mr. Lehman called and asked the paralegal for an update. She said she would have Mr. M. return his call. On August 6, Mr. M. apparently filed and served Mr. Lehman's April 2015 through July 2015 bank statements and pay stubs. Mr. M. did not communicate to Mr. Lehman that these documents were filed.

By August 14, Mr. Lehman still had not heard from Mr. M. So Mr. Lehman called and spoke to Mr. M. Mr. M. chastised Mr. Lehman for calling too much, and assured Mr. Lehman he would be contacted if necessary.

On August 19, Mr. Lehman called and spoke to the paralegal. He told her he was changing jobs and his pay would decrease. The record does not show whether the paralegal provided Mr. M. with this new information.

4

August 24 was the 60th day after Mr. Lehman had been served. Mr. M. however had not answered the petition, prepared or filed Mr. Lehman's financial declaration, or prepared or filed a child support worksheet on Mr. Lehman's behalf.

On September 4, Mr. M. notified his boss, Patrick Fannin, that he was resigning effective September 18. Mr. M. had sole responsibility for approximately 50 active family law cases, including Mr. Lehman's. Mr. M. did not tell Mr. Lehman he was resigning from the firm.

On September 10, instead of moving for default, Ms. Lincoln, through her attorney, noted the petition for modification of child support for a hearing. The noting document stated the petition for modification involved "an issue of law in this case" and would be heard on the civil motion calendar two weeks later, on September 24. Clerk's Papers (CP) at 70. A copy of the notice was sent to Mr. M. Mr. M. did not provide a copy of the notice to Mr. Lehman.

On September 16, Ms. Lincoln filed and served extensive documents, including her financial declaration, her child support worksheet, and her older child's declaration discussing her financial needs and lack of resources. Further, Ms. Lincoln filed an additional declaration. Among other things stated in her additional declaration, Ms. Lincoln "request[ed] [Mr. Lehman] to be ordered to pay [the older child's] entire need on

a monthly basis so that she could go to college." CP at 116. These documents were all sent to Mr. M. Again, Mr. M. did not provide a copy of these documents to Mr. Lehman (and Mr. Lehman did not see them until almost 30 days after the final orders were entered). Mr. Lehman was unaware that his former wife's petition was about to be determined by a judicial officer.

On September 22, because he had not heard from Mr. M., Mr. Lehman e-mailed his attorney's office requesting an update. He did not receive any response. By that time, and unknown to Mr. Lehman, Mr. M. no longer was employed with the firm.

Mr. M.'s boss, Mr. Fannin, tried the best he could to obtain attorneys outside his firm to cover Mr. M.'s 50 cases. But Mr. Fannin could not obtain anyone to handle Mr. Lehman's September 24 hearing. Mr. M. agreed to argue Mr. Lehman's September 24 hearing telephonically. Despite having not prepared and filed a response to the petition, or even a financial declaration and a child support worksheet for his client, Mr. M. did not request a continuance. Nor did he object[2] to the expanded scope of the hearing, and the late documents filed by Ms. Lincoln.

---

[2] During the hearing, Mr. M. stated the issue was postsecondary support. This vague statement is insufficient to constitute an objection to the numerous issues raised in the body of the petition, Ms. Lincoln's filings, and her attorney's arguments.

A court commissioner considered the filings and arguments, determined there was good cause to grant Ms. Lincoln's petition, and orally determined she was entitled to most of the relief she requested. The commissioner ordered Ms. Lincoln's attorney to draft the proposed orders and to provide a copy to Mr. M. by September 25. The commissioner set October 1 for presentation if the attorneys could not agree on the documents before that time. Mr. M. did not communicate the result of the hearing to Mr. Lehman.

On September 28, Mr. M. withdrew from representing Mr. Lehman, and another attorney from his prior firm substituted. On September 30, the paralegal sent an e-mail to Mr. Lehman, saying please review, but the e-mail had no attachment. Mr. Lehman e-mailed back that there was no attachment. The paralegal did not respond that day.

On October 1, the commissioner entered findings and conclusions, a modification order, a child support order, and a child support worksheet. The final documents contain a number of possible errors. But no one brought these possible errors to the commissioner's attention. One possible error in particular caused Mr. Lehman to pay more than 45 percent of his disposable earnings in child support.

On October 26, Mr. Lehman saw the final orders for the first time. He filed a notice of appeal the following work day, which was the last day for appealing the orders.

On December 23, 2015, Mr. Lehman filed a motion to show cause to vacate the final orders. In his memorandum, he cited CR 60(b)(1) and CR 60(b)(11). The moving papers included a declaration from Mr. Lehman, a child support worksheet, a financial declaration, and a detailed explanation from Mr. Fannin explaining what had happened, and promising to pay Ms. Lincoln's attorney fees should the commissioner grant Mr. Lehman's request to vacate the orders.

Mr. Lehman's arguments were largely focused on all the perceived procedural and substantive errors that led to the final orders being entered. Mr. Lehman also argued that relief should be granted under CR 60(b)(11). Specifically, he argued "[t]he Court should vacate the October 1, 2015 orders pursuant to CR 60(b)(11) based on the total exclusion of Mr. Lehman from participation in or knowledge of his own case." CP at 183 (boldface omitted).

The commissioner denied Mr. Lehman's request, agreeing with Ms. Lincoln's arguments that courts prefer finality, and a lawyer's negligence or incompetence is not a basis to vacate a final judgment. The commissioner did not address Mr. Lehman's argument that he was totally excluded from his case. The closest the commissioner came to addressing the argument was in its finding 8:

8.      The court finds that the father did participate in his case *through counsel*. Further the court finds that although his counsel's representation was inadequate, that this does [not] allow the court to vacate an order under current case law. Specifically, the incompetence or neglect of a party's own attorney is not sufficient grounds for relief from a judgment in a civil action.

CP at 491 (emphasis added).

Mr. Lehman filed a motion for revision. At the hearing, the superior court judge stated the commissioner handled the hearing much differently than it would have, and probably made procedural and substantive errors. The judge ultimately denied Mr. Lehman's motion, believing the errors were best corrected on appeal rather than by a motion to vacate.

Mr. Lehman appealed the judge's order denying his motion to vacate. We later consolidated both appeals.

## ANALYSIS

A.      FIRST APPEAL: MODIFICATION ORDERS

Preliminarily, we address the posture of our review of the first appeal:

[U]nless a demand for revision is made within ten days from the entry of the order or judgment of the court commissioner, the orders and judgments shall be and become the orders and judgments of the superior court, and appellate review thereof may be sought in the same fashion as review of like orders and judgments entered by the judge.

RCW 2.24.050. For this reason, we need not have an independent order from a judge after the commissioner's order.

In his first appeal, Mr. Lehman asserts that seven errors warrant either partial or complete reversal of the modification orders. He divides the asserted errors into two general categories.

He first generally asserts the commissioner erred when it modified any portion of the child support order unrelated to postsecondary educational support without a statutorily sufficient basis. Specifically, he asserts there was an insufficient statutory basis to (1) modify child support for the younger child, (2) modify Mr. Lehman's payment schedule, (3) add an automatic adjustment of child support, and (4) modify the parties' obligation to pay their proportional share of educational expenses for the older child.

He next generally asserts that the commissioner erred by violating substantive and procedural statutory requirements when it ordered postsecondary educational support. Specifically, he asserts (5) RCW 26.19.090(6) required the commissioner to consider certain factors prior to ordering postsecondary educational support, and there was no evidence presented on at least three of the required factors, (6) ordering postsecondary support to be paid to the mother violates RCW 26.19.090(6) because the oldest child does

10

not live with the mother, and (7) the commissioner failed to conduct a proper trial on the affidavits.

Ms. Lincoln provides a substantive response to each of these asserted errors. She also asserts that if there were errors, the errors were either waived or not preserved. We agree.

"Under RAP 2.5(a), we generally do not review any claim of error not raised in the trial court." *In re Adoption of T.A.W.*, 188 Wn. App. 799, 807, 354 P.3d 46 (2015), *aff'd*, 186 Wn.2d 828, 383 P.3d 492 (2016). "This rule exists to give the trial court an opportunity to correct the error and to give the opposing party an opportunity to respond." *State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015). We reviewed the transcript of the original hearing and it is clear that Mr. M. did not raise any objection that could have permitted the commissioner to correct or address the seven alleged errors Mr. Lehman argues on appeal.

RAP 2.5(a) contains three exceptions to the general rule that allows unpreserved errors to be raised. Mr. Lehman does not argue that any of the three exceptions apply. We decline to address an issue involving an argument not asserted.

B.    SECOND APPEAL: DENIAL OF MOTION TO VACATE MODIFICATION ORDERS

Preliminarily, we address the posture of our review of the second appeal:

11

Generally, an appellate court reviews the superior court's ruling, not the commissioner's, but "when the superior court denies a motion for revision, it adopts the commissioner's findings, conclusions, and rulings as its own." *State ex rel. J.V.G. v. Van Guilder*, 137 Wn. App. 417, 423, 154 P.3d 243 (2007). Therefore, we review the commissioner's findings, conclusions, and rulings.

A proceeding to vacate or set aside a judgment is equitable in character, and "relief sought or afforded is to be administered in accordance with equitable principles and terms." *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). A court "should exercise its authority liberally, as well as equitably, to the end that substantial rights be preserved and justice between the parties be fairly and judiciously done." *Id.* The overriding reason when determining if vacation is proper is "'whether or not justice is being done.'" *Calhoun v. Merritt*, 46 Wn. App. 616, 619, 731 P.2d 1094 (1986) (quoting *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979)).

We review a trial court's grant or denial of a CR 60(b) motion to vacate for an abuse of discretion. *Barr v. MacGugan*, 119 Wn. App. 43, 46, 78 P.3d 660 (2003). A court abuses its discretion when its decision is based on untenable grounds or reasoning. *Id.*

12

> [A] party challenging the denial of a motion for relief from a judgment cannot prevail on appeal simply because the trial court *could* have vacated the judgment. Instead, he must demonstrate a basis for relief from the judgment so compelling that the trial court had *no tenable basis for refusing* to vacate.

*In re Marriage of Olsen*, 183 Wn. App. 546, 558, 333 P.3d 561 (2014).

### 1. *CR 60(b)(1): Irregularities in obtaining the orders*

Mr. Lehman argues the trial court abused its discretion by refusing to vacate the orders under CR 60(b)(1). This provision allows a trial court to vacate an order for mistake, inadvertence, surprise, excusable neglect or irregularity in obtaining the order. Mr. Lehman asserts that the trial court abused its discretion in not vacating the modification orders because there were irregularities in obtaining them.

An irregularity in obtaining an order exists where there is a failure to adhere to some prescribed rule or mode of proceeding, such as when a procedural matter that is necessary for the orderly conduct of trial is omitted or done at an unreasonable time or in an improper manner. *Lane v. Brown & Haley*, 81 Wn. App. 102, 106, 912 P.2d 1040 (1996).

Mr. Lehman lists the following asserted irregularities: (1) he was denied timely notice of the claims made against him, (2) he was denied proper notice of the hearing, (3) he was denied the opportunity to conduct discovery, and (4) the court commissioner

"made no efforts to comply with the requirements of a multitude of statutory requirements." Appellant's Br. at 47. We disagree.

First, Mr. Lehman received the petition to modify child support nearly 90 days before the hearing. Ms. Lincoln filed additional papers eight days before the hearing. Those papers clarified and somewhat expanded her request for relief. Although Mr. Lehman did not receive those papers, his attorney did. Mr. Lehman's attorney had notice. Generally, notice to the attorney is notice to the client. *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). Mr. M. could have requested a continuance, but he did not.

Second, client notice is not a requirement. *Lane*, 81 Wn. App. at 106.

Third, discovery is not a requirement. There is no court rule that requires discovery prior to entry of final orders. Moreover, Mr. Lehman was not denied discovery. His attorney failed to request a continuance so discovery could occur.

Fourth, we will not guess to what statutory requirements Mr. Lehman refers. Suffice it to say, his argument would be stronger if his attorney requested compliance with a specific statutory requirement and the trial court arbitrarily refused his request.

Ultimately, Mr. Lehman's asserted irregularities do not go to any court process imposed on him. Instead, Mr. Lehman's asserted irregularities go to *his* attorney's failure

14

to protect his rights. The negligence or even incompetence of one's own attorney is an insufficient reason to vacate an order or judgment. *Haller*, 89 Wn.2d at 547.

For the reasons discussed, the trial court did not abuse its discretion when it refused to set aside Mr. Lehman's motion to vacate under CR 60(b)(1).

2. *CR 60(b)(11): Any other reason justifying relief*

Mr. Lehman next argues the trial court abused its discretion by refusing to vacate the orders under CR 60(b)(11). CR 60(b)(11) allows a trial court to vacate an order for "[a]ny other reason justifying relief from the operation of the judgment." Despite the apparent breadth of the language, "'[t]he use of CR 60(b)(11) should be confined to situations involving extraordinary circumstances not covered by any other section of the rule.'" *Barr*, 119 Wn. App. at 46 (internal quotation marks omitted) (quoting *Gustafson v. Gustafson*, 54 Wn. App. 66, 75, 772 P.2d 1031 (1989)).

Mr. Lehman argued below and argues on appeal that vacation under CR 60(b)(11) is proper based on *his* total seclusion from participating in or knowledge of his case. As noted above, the findings did not address this argument.

In general, the absence of an express finding on a material factual issue is presumed to be a negative finding, based on the failure of proof on that issue. *Smith v.*

15

*King*, 106 Wn.2d 443, 451, 722 P.2d 796 (1986). But applying such a presumption here would ignore a well-recognized exception to the rule:

> This common law rule must be selectively applied. It should not be determinative on a material issue where the record shows . . . there is ample evidence to support the missing finding, and the findings entered by the court, viewed as a whole, demonstrate that the absence of the specific finding was not intentional.

*Douglas NW, Inc. v. Bill O'Brien & Sons Constr., Inc.*, 64 Wn. App. 661, 682, 828 P.2d 565 (1992).

Here, there is ample evidence that Mr. M's inactions resulted in Mr. Lehman not being able to participate and know how his case was proceeding. We will, therefore, not treat the absence of a finding on this issue as a finding against Mr. Lehman.

Because the trial court did not enter findings on this argument, remand is necessary. We deem it important for the trial court to make explicit findings and conclusions on this worthwhile argument. But before so doing, we wish to clarify this area of the law, which is discussed by both parties in their briefs.

Both parties properly focus on *Barr v. MacGugan*, 119 Wn. App. 43. In *Barr*, we applied CR 60(b)(11) to a situation where an attorney's inactions "effectively deprive[d] a diligent but unknowing client of representation." *Id.* at 48. In November 2000, Barr hired an attorney to file suit against MacGugan. *Id.* at 45. In the spring of 2001, Barr's

attorney failed to respond to discovery requests. *Id.* He then failed to comply with an order compelling discovery responses. *Id.* On December 3, 2001, because of the attorney's noncompliance with the order, the trial court dismissed Barr's lawsuit with prejudice. *Id.*

In August 2002, Barr learned from her attorney's landlord that her case had been dismissed, and that her attorney had been suffering from severe clinical depression. *Id.* Although Barr had received the discovery questions from her attorney in March 2001, she heard nothing from him since she provided her draft answers to him. *Id.* She left multiple phone messages for him in the fall of 2001 and again in the spring of 2002, but never heard from him. *Id.* Importantly, she had no knowledge of the defendant's motions to compel or dismiss. *Id.* Upon learning that her case was dismissed, Barr hired new counsel, who in October 2002, successfully obtained an order that vacated the order of dismissal. *Id.* MacGugan appealed. *Id.*

We noted that CR 60(b) did not permit a trial court to vacate a judgment or order because of an attorney's negligence. *Id.* at 46. We explained the principle that underlies this rule:

> [U]nder the law of agency, if an attorney is authorized to appear on behalf of a client, that attorney's acts are binding on the client. *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). Thus, the attorney's negligence is attributable to the client. *Haller*, 89 Wn.2d at 547.

17

*Barr*, 119 Wn. App. at 46.

In *Barr*, we refused to apply the *Haller* rule for three reasons. First, and most important, there was no basis for attributing to Barr her attorney's actions (or inactions). We determined "the agency relationship ha[d] disintegrated to the point where as a practical matter there was no representation." *Id.* at 48. Second, Barr was diligent in her case. She attempted to make appropriate inquiries, but still was unaware of the events of her case. *Id.* Third, we expressed a desire that cases should be decided on their merits.[3] *Id.* at 47.

Ms. Lincoln argues *Barr* is inapplicable. She argues there is no evidence that Mr. M. had a "condition," and *Barr* expressly limited its holding to situations where the "attorney's condition effectively deprive[d] a diligent but unknowing client of representation." *Id.* at 48. Ms. Lincoln is correct. Nevertheless, the requirement of a "condition" is arbitrary, given that the focus of our inquiry is the lack of the attorney-client agency relationship. It is the existence of this agency relationship that underlies the general rule that an attorney's negligence is not a basis to vacate a judgment or order. When this agency ceases, so should our application of the general rule.

---

[3] We desire cases to be decided on their merits so a finder of fact can declare what is true, and the law can produce a just result. When an attorney substantially fails to present his or her client's facts to the finder of fact, truth is in doubt, and so is the result.

18

We hold that a court may vacate a judgment or order under CR 60(b)(11) in those situations where an attorney's gross negligence effectively deprived a diligent but unknowing client of representation.

CONCLUSION

We do not review the issues raised in Mr. Lehman's first appeal because he failed to preserve those issues. Also, we affirm the trial court's refusal to vacate the modification orders on the basis of CR 60(b)(1). But we remand to the trial court for it to make additional findings on whether the orders should be vacated under CR 60(b)(11), consistent with our analysis of that rule in this opinion.

Affirmed in part and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

I CONCUR:

Fearing, C.J.

19

No. 33868-1-III
(consolidated w/ No. 34168-2-III)

Siddoway, J. (concurring in result) — I agree with the majority's disposition of the first two issues it addresses: Lane Lehman's first appeal and his assignment of error to the trial court's denial of his motion to vacate the judgment under CR 60(b)(1).

I otherwise concur in the result only because, as to the third issue, the majority goes beyond what I would address in ordering remand. I agree with the majority that Mr. Lehman's argument that his attorney's conduct effectively deprived him of representation is inadequately addressed by findings or oral rulings in the trial court—probably because it was unforeseen that we would treat errors assigned in the first appeal as unpreserved. Mr. Lehman is entitled to a clearer decision on his argument that he was effectively deprived of representation.

That said, the trial court is perfectly capable of applying the general rule of *Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978) and the narrow exception provided by *Barr v. MacGugan*, 119 Wn. App. 43, 48, 78 P.3d 660 (2003). No guidance on the circumstances under which the trial court can vacate the judgment against Mr. Lehman is needed or appropriate.

_____
Siddoway, J.