IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39750-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL JAMES KEGLEY, | ) | |
| also known as MIKE FALCON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Michael Kegley appeals his conviction for assault in the second degree. He argues his trial counsel was ineffective by failing to request a no-duty-to-retreat instruction. Because trial counsel had a legitimate strategic reason for not requesting the instruction and because the lack of the instruction did not prejudice him, we disagree. We affirm Kegley's conviction but remand for the trial court to strike the victim penalty assessment.

FACTS

*Background*

Both Michael Kegley and Jordan Austin-Stovall were staying at a homeless shelter. Kegley had been talking to himself on and off throughout the day. Around

midnight, Austin-Stovall heard Kegley talking to himself and utter a racial slur. Austin-Stovall was standing near his bed and asked Kegley, about 10 feet away, to stop using offensive language. Kegley approached Austin-Stovall, close enough to where their lips were nearly touching. Austin-Stovall shoved Kegley to the ground. Kegley took a box cutter from his back pocket and used it to slash Austin-Stovall underneath his left eye, which left a disfiguring scar.

The State, by amended information, charged Kegley with assault in the second degree and alleged that Kegley had committed the assault while armed with a deadly weapon. After a short delay for Kegley to undergo a mental competency evaluation, the parties tried their case to a jury.

*Trial*

The State called Austin-Stovall, and he testified to the facts stated above. It also called George Simcask. Simcask testified he was working as private security at the shelter on the night of the assault. He heard Austin-Stovall and Kegley shouting and arguing. He saw Kegley approach Austin-Stovall and stand "in his face." Rep. of Proc. (RP) at 135. He then saw Austin-Stovall shove Kegley away from him. Kegley then drew a box cutter, slashed Austin-Stovall across the face, and walked outside to smoke a cigarette.

Kegley testified in his defense. He denied he had been talking to himself or uttering racial slurs. He said he approached and stood face to face with Austin-Stovall, that Austin-Stovall then shoved him, and characterized the shove as an assault.

Kegley explained he had a box cutter on him, and he intentionally cut Austin-Stovall in the face with it because he was in his "bubble." RP at 158. He explained he cut Austin-Stovall because his scoliosis, injured back, and age made him incapable of fighting the younger man. He testified he had simply defended himself and that Austin-Stovall had started the fight.

Defense counsel requested self-defense and initial aggressor jury instructions, which were given by the trial court. The court's instructions included the following, which the parties discussed during their closing arguments:

INSTRUCTION NO. 12

It is a defense to a charge of assault that the force used was lawful as defined in this instruction.

The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State

3

has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

Clerk's Papers (CP) at 58.

### INSTRUCTION NO. 13

Necessary means that, under the circumstances as they reasonably appeared to the actor at the time, (1) no reasonably effective alternative to the use of force appeared to exist and (2) the amount of force used was reasonable to effect the lawful purpose intended.

CP at 59.

### INSTRUCTION NO. 14

A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

CP at 60.

### INSTRUCTION NO. 15

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer, or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 61. Defense counsel did not request a no-duty-to-retreat instruction.

In its closing argument, the State argued (1) the box cutter was a deadly weapon, (2) Austin-Stovall's facial scar was a substantial disfigurement, (3) Kegley was the aggressor, and (4) Kegley's use of force was not necessary because Kegley could have yelled out to the nearby security guard. In response, defense counsel argued (1) the box cutter was not a deadly weapon, (2) Austin-Stovall's facial scar was not a substantial disfigurement, (3) Austin-Stovall was the aggressor, and (4) Kegley acted in self-defense.

The jury found Kegley guilty of assault in the second degree and found that the box cutter was a deadly weapon. The trial court sentenced Kegley to a midrange sentence and also imposed a $500 victim penalty assessment (VPA).

Kegley appeals to this court.

## ANALYSIS

*Ineffective assistance of counsel*

Kegley argues he received ineffective assistance of counsel due to counsel's failure to request a no-duty-to-retreat instruction.

We review a claim of ineffective assistance of counsel de novo. *State v. Backemeyer*, 5 Wn. App. 2d 841, 848, 428 P.3d 366 (2018). "Where the claim of ineffective assistance is based upon counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction, counsel's

5

performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012).

Here, the State concedes that Kegley was entitled to a no-duty-to-retreat instruction but argues defense counsel was not ineffective because there was a legitimate strategy not to request the instruction and that counsel's failure to request the instruction did not prejudice Kegley. We agree.

Defense counsel's performance is deficient "if it falls 'below an objective standard of reasonableness.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). There is a strong presumption that counsel's performance was reasonable. *Id.* Conduct by defense counsel that can be characterized as a legitimate strategy will not be deemed deficient performance. *State v. Breitung*, 173 Wn.2d 393, 398, 267 P.3d 1012 (2011).

Kegley argues that defense counsel lacked a reasonable trial strategy by failing to request a no-duty-to-retreat instruction. He argues the jury may have convicted him because it believed his use of force was unlawful because the option of retreat made force not "necessary," as discussed in instructions 12 and 13. We disagree.

Here, the State did not argue that the option of retreat made Kegley's use of force unlawful. Rather, it argued that the option of yelling for help from the security guard made Kegley's use of force unlawful. Because the State did not focus on the option of

6

retreat, it was a reasonable trial strategy for defense counsel not to put that option in the jury's mind by requesting the retreat instruction.

Additionally, we fail to see how defense counsel's failure to request the instruction prejudiced Kegley. Again, the State did not argue that Kegley should have retreated; it argued that Kegley should have yelled for help from the nearby security guard.

For these reasons, we disagree with Kegley that he received ineffective assistance of counsel.

*VPA*

Kegley also challenges the trial court's imposition of the $500 VPA. Effective July 1, 2023, the Washington Legislature amended RCW 7.68.035 to require courts to waive the VPA for indigent individuals. RCW 7.68.035(5)(b). The trial court found Kegley to be indigent. Kegley requests, and the State agrees, that the VPA should be struck. We remand for the trial court to strike the VPA.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

In his original SAG submission, Kegley asserts various errors without providing any argument or authority—60-day speedy trial, kidnapping, equal rights, sexual discrimination, racial discrimination, home invasion, and self-defense. Inadequately argued claims of error are deemed waived. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

7

In his supplementary SAG submission, Kegley raises two additional claims of error. He first argues his state and federal constitutional rights to a speedy trial were violated. Here, the record does not show when Kegley was arraigned. Nevertheless, Kegley's trial occurred less than three months after the court's finding of probable cause, which occurs before an arraignment. Because of this, we know that less than 90 days passed between Kegley's arraignment and trial. Kegley fails to cite any authority to support the notion that such a short time between arraignment and trial constitutes a constitutional violation. Again, inadequately argued claims of error are deemed waived. *Id.*

Kegley next argues his trial attorney was ineffective because counsel failed to prepare him to testify without incriminating himself. Specifically, Kegley contends his admission that he intended to cut Austin-Stovall caused him prejudice, and his counsel was ineffective in failing to advise him on this issue. We disagree. Kegley's admission that he intended to cut Austin-Stovall was inconsequential. There was no dispute that Kegley's act of cutting Austin-Stovall was intentional; the only question was whether it was done in self-defense. Because Kegley is unable to establish prejudice from his counsel's asserted ineffectiveness, we reject his second supplementary SAG claim.

No. 39750-5-III
*State v. Kegley*

Affirmed, but remanded to strike the VPA.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____    _____
Fearing, J.                                 Murphy, J.

9